SUMNER ADAMS *vs.* ALEXANDER MACFARLANE.

Cumberland, 1875.—August 5, 1876.

*Pleading. Abatement. Arbitration. Trial.*

The service of a writ by arrest of the defendant, will not be ground of abate-
ment, or illegal, simply because he was not a resident, nor within the state,
when the writ was made, and the oath that he was about to depart, &c.,
(required by R. S., c. 113, § 2, to authorize the arrest,) was taken.

A promise to pay in six months, the amount awarded by an arbitrator, is not
avoided by delay of the arbitrator to make the award within that time, pro-
vided the promisor consents to the delay. Such consent is in effect a waiver
of the delay.

On submission to arbitration of mutual accounts between the parties, an
agreement that an annexed statement of disbursements and collections
shall be taken by the arbitrator to be correct, does not preclude the arbitra-
tor from hearing evidence in relation to items not included in such state-
ment. The term correct in that connection does not mean complete.

A subsequent instruction in the judge's charge to the jury, will not by impli-
cation revoke a previous instruction.

Thus: where the instruction was given near the close of the charge, that "if
the defendant did sign the guaranty under a misapprehension of the amount
of the plaintiff's claim, and was deceived as to the amount, if he was unde-
ceived before the hearing by the arbitrator, and by himself or his agent
proceeded to the hearing with full knowledge and without objection, he
cannot now be entitled to repudiate his guaranty for that cause;" *held,* that
it could not be fairly construed as revoking a previous instruction to find
for the defendant without further considering the case, if the plaintiff had
fraudulently misrepresented or concealed the amount of his claim, but
must be held to apply to and cover a case of misapprehension, mistake or
self-deception only on the part of the defendant, as to the amount of liabil-
ity he was incurring, that thus construed, the defendant could not complain
of it.

ON EXCEPTIONS and MOTION from the superior court.

ASSUMPSIT on a written guaranty by the defendant of performance of promises of one Cutter, a manufacturer of grindstones, and resident in Nova Scotia, of whom the plaintiff was the selling agent in the United States, three years from March 20, 1867.

On the failure of Cutter to fulfill his absolute promise to pay the amount actually due, or his alternative promise to pay what D. W. Fessenden should find due, the plaintiff then resident of Boston, sued out the capias writ in this case against the defendant, described as of Wallace, in the province of Nova Scotia. The plaintiff made the statute oath to authorize the arrest at Portland, May 12, 1874, and on May 19, 1874, the defendant was found in this state, arrested at Portland, and released on bond.

At the return term, September, 1874, the defendant pleaded in abatement, because, that at the time when said writ was sued out, and from thence always, until, and at the time, when said Adams made oath, on the twelfth day of May, 1874, and during the whole of said day, said Macfarlane was neither a resident of said state, nor within its limits, and never had been a resident of said state, nor had been for a long time, to wit, for two months, within the limits thereof, but was at all times in the Dominion of Canada, and a citizen and resident thereof.

To the ruling of the justice on the plaintiff's demurrer that the plea was bad, the defendant excepted.

At the December term, 1874, there was a trial at which the defense relied on was the fraud of the plaintiff in understating his claim, and where the validity of an award as a measure of damages was contested, because not seasonably made, because not accompanied with a detailed statement, and on the ground that the arbitrator took into account matters not submitted to him.

The verdict was for the plaintiff for $13,975.96, (the amount of the award and interest,) which the defendant moved to have set aside. He also filed other exceptions which, together with a more full statement of the facts, appear in the opinion.

*W. L. Putnam,* for the defendant.

*J. S. Abbott* and *N. Cleaves,* for the plaintiff.

BARROWS, J. The case is presented by the defendant upon two bills of exceptions, and a motion to set aside the verdict as against law and evidence. The action is assumpsit on a contract subscribed by the defendant.

The first bill of exceptions was filed to the overruling of the defendant's plea in abatement, to which the plaintiff demurred.

This plea is not one which we feel called upon to favor in furtherance of justice. *Hazzard* v. *Haskell*, 27 Maine, 549.

The papers and testimony in the case show that the contract declared on was entered into and executed in this state, that then and for some time afterwards, the plaintiff was a resident here, and that much of the business was transacted here. It was taking no unjust advantage of the defendant, and might well be supposed to be for the interest of both parties to have the controversy investigated here where much of the testimony was likely to be found.

If there is such a service as to give the court jurisdiction of the defendant the writ should not abate.

The cause of abatement set forth in the plea is, "that at the time when said writ was sued out, and from thence always, until, and at the time when said Sumner Adams made oath that said Adams had reason to believe, and did believe said Macfarlane was about to depart, and reside beyond the limits of this state, as is certified on said writ, to wit, on the twelfth day of May, in the year of our Lord eighteen hundred and seventy-four, and during the whole of said day, said Macfarlane was neither a resident of said state, nor within its limits, and never had been a resident of said state, nor had been for a long time previous, to wit, two months within the limit thereof, but was at all said times in the Dominion of Canada, of which said Dominion at all said times, said Macfarlane was a citizen and resident."

Now, unless the plea contains matter, which, of itself, and without resorting to any inference of fact, is sufficient ground of abatement, alleged with such precision, and certainty as to exclude all such supposable matter as would, if alleged on the opposite side, defeat it, if it is bad on demurrer. *Tweed* v. *Libby*, 37 Maine, 49. *State* v. *Sweetsir*, 53 Maine, 438.

The supposed cause of abatement is in substance an insufficient service—insufficient, it is claimed, because the arrest was unlawful.

If the service is by an unlawful arrest, it seems to be good ground of abatement if seasonably pleaded, or upon seasonable motion, if the defect or illegality appears in the record. *Cook* v. *Lothrop*, 18 Maine, 260. *Sawtelle* v. *Jewell*, 34 Maine, 543. *Shaw* v. *Usher*, 41 Maine, 102. *Bailey* v. *Carville*, 62 Maine, 524. *Willington* v. *Stearns*, 1 Pick., 497.

If it be conceded that we may go beyond the averments in the plea, and look into the record to ascertain that the service was by arrest, and that the plaintiff was a resident of Massachusetts at the time when the writ was sued out, still we think there is not enough to show the arrest illegal.

If it be true that the acceptance of jurisdiction in personal actions between foreigners depends upon comity and sound judicial discretion, so far as we know, that comity and discretion are always favorably exercised when the court has actual jurisdiction of the parties and the subject matter of the suit. It must be a case where there was at least reason to suspect a disposition to oppress, or to obtain an unfair advantage on the part of the plaintiff, which would induce us to close our doors to a citizen of a neighboring state, claiming redress against another non-resident upon whom personal service within our borders had been made in a suit upon a contract, made in this state, and mainly to be executed here. The question remains whether the facts alleged in the plea in abatement, exclude the supposition of a lawful arrest. By R. S., c. 113, § 2, it is provided that "any person, a resident within this state or not, may be arrested and held to bail . . . . on mesne process on contract express or implied, if the sum demanded amounts to ten dollars," upon certain conditions which are substantially identical with those prescribed in the Revised Statutes of 1841, c. 148, § 2. The construction of that section was before the court in *Marston* v. *Savage et al.*, 38 Maine, 128, and the court held that the proof of the facts necessary to the exercise of the right to arrest, is the oath of the creditor, his agent, or attorney, that he has reason to believe and does believe that they exist, and that when no fraud is imputable to the credi-

tor, and the certificate required by the statute is indorsed upon the writ, an arrest may be legally made, and the obligors in the bond given, cannot be permitted to defend, by showing that in point of fact, the debtor was not about to depart and reside beyond the limits of the state, &c.

It would seem that the arrest of either a resident or non-resident of the state is legal, if the certificate indorsed on the writ shows that the plaintiff has made the requisite oath, unless the plaintiff's good faith in so doing is impeached.

Now, it is not averred in the plea under consideration, that the plaintiff did not have good reason to believe, and did not believe the various facts alleged in the certificate. The only averments are of certain facts apparently inconsistent therewith. But, as we have seen, the validity of the arrest is not affected by the simple non-existence of those facts where the plaintiff has acted in good faith, when he made oath to his belief and reason to believe therein.

The plea is insufficient in substance. It presents no facts which are decisive against the validity of the arrest. The case which the defendant's counsel has ingeniously argued, of a "non-resident lurking upon our borders prepared to arrest and impede other non-residents invited to cross our territory," is not presented by it.

The demurrer to the plea was rightly sustained, and the first bill of exceptions must be overruled.

The case developed at the trial was this: The defendant was trustee for the parties interested in a Nova Scotia grind-stone quarry, which one Cutter was operating under a lease. In March, 1867, the plaintiff became Cutter's selling agent in this country, under a written agreement, and was to receive as his compensation, his expenses and one-half the profits under certain limitations, and with certain exceptions, and was to have a lien upon the stones and funds in his possession to secure him for his disbursements and liabilities, and for advances which he agreed to make, not to exceed $5000 at any one time. The following year by a supplementary agreement, Cutter agreed in writing to allow the plaintiff upon settlement, "$2 per ton on all stones he has sold, over and above the expenses of same, if the amount in the

agreement which I entered into with him, should not prove satisfactory upon final adjustment."

In December, 1869, the plaintiff was liable upon his acceptances of Cutter's drafts, to an amount exceeding $10,000, and Cutter was largely indebted to him for expenses incurred, interest, and commissions. The plaintiff was unable to meet the drafts as they fell due, and one or more of them was protested. He commenced suit against Cutter, and attached stones which had been sent to this country for sale, the value of which was at that time variously estimated by the parties· to the contract presently to be noticed, at from $12,000 to $18,000. Under these circumstances, the defendant, Macfarlane, in whose favor there was a draft for $1600, and who seems to have indorsed the other drafts for Cutter, came here with Cutter, and a member of the firm of A. W. Masters & Co., in whose favor $6100 of the outstanding acceptances had been drawn, and after several days' examination of the plaintiff's books and accounts in pursuance of a written contract drawn up at the request of this defendant, the plaintiff released his attachment, discontinued his suit, and gave up his lien on the stones in his possession, which went forthwith into the hands of this defendant, Macfarlane, and Masters & Co., who, waiving all demands or notice to themselves, subscribed a written, absolute, and unconditional guaranty, (indorsed upon the contract) of performance by Cutter of his promises and agreements therein contained. Upon this contract of guaranty this suit is brought. It is apparent that the defendant and Masters & Co., while they were nominally only sureties for Cutter, had such a direct interest to procure from the plaintiff the release of his attachment and lien upon Cutter's property, in order that it might be applied to the payment of their own claims and immediate liabilities, that as to him they stood rather in the relation of principals, to whom the consideration moved from him through Cutter. In any event, however, they are to be bound only according to the terms of their contract, and it is necessary to ascertain what they did actually promise and undertake.

The contract sets out the relation sustained by the plaintiff to Cutter, under the agreements just recited, (which are referred to)

and the fact that the plaintiff had rendered services, made advances, and accepted drafts, on Cutter's account, for which Cutter was indebted to him to an amount as yet unliquidated, with the further facts of the commencement of the plaintiff's suit, and the attachment of property to enforce his lien under the original contract; whereupon in consideration of the premises, and plaintiff's promise to discontinue his suit, discharge his attachment, release his lien, and surrender possession of the property, and to discount one-half of the amount due him for compensation for his services as agent, since January 1, 1868, and to make reasonable efforts to collect what remained due for grind-stones sold and delivered under his agency, Cutter on his part promised that he would, on or before May 1, 1870, "adjust and settle all the mutual accounts pertaining to the aforesaid business . . . including interest and services and expenses, taking the annexed statement of disbursements and collections as correct to this date," and that he would pay the full amount that should be found due to said Adams upon such adjustment, less one-half the amount for Adams's services, since January 1, 1868, in three and six months from May 1, 1870, and would cause Adams's acceptances to be surrendered to him, or save him harmless thereon; and that in case he should fail to perform his agreement to adjust and settle the accounts before May 1, 1870, "then the said Adams may cause a statement and adjustment of said accounts to be made by Daniel W. Fessenden, of Portland, by the fifteenth day of May, 1870, or as soon thereafter, as the same can be completed," which adjustment made without notice to Cutter was to be as binding upon the parties as if made by themselves in person, and the amount thereof less the discount of fifty per cent. on the services before mentioned, was to be paid in three and six months from May 1, 1870, with interest thereon from that date.

It was "in consideration of the premises, and of the guaranty of the performance of said Cutter's aforesaid contract by Alexander Macfarlane and A. W. Masters & Co.," that the plaintiff entered into this agreement.

The first count in the writ alleges the foregoing facts and agreements, performance by plaintiff, and failure to perform on the

part of Cutter, and an adjustment made by Fessenden, unavoidably delayed until December 22, 1870, of the causes of which delay Cutter and defendant were cognizant and assented thereto; that said statement and adjustment were made upon notice to Cutter, and an appearance by him with counsel, and that the award was seasonably made known to all the parties.

The second count sets out the facts and agreements as stated in the first count, prompt and seasonable proceedings on the part of the plaintiff, to procure an adjustment by Fessenden, and claims that in case his award is invalid by reason of the delay in making the same, the defendant is nevertheless bound by the terms of the agreement to respond for Cutter's failure to adjust the accounts and pay what was in fact due.

The verdict was for the amount of the award made by Fessenden. The defense was based upon an allegation that plaintiff procured the defendant's guaranty by falsely representing that his claim did not exceed $4000 or $5000. The defendant further claimed that in any event the award was not binding, because not seasonably made, because no statement was returned with it, and because it included matters not covered by the submission. Was the award valid so as to constitute the proper measure of damages?

The jury were duly instructed that they "must be satisfied in order to render it binding, that it included only, and had reference only to matters submitted to him by the agreement of reference."

It is strenuously and ingeniously argued by defendant's counsel that certain items which do not appear in the schedule annexed to the contract of December 15, 1869, (while they evidently form part of the mutual accounts pertaining to the business between Cutter and the plaintiff,) were beyond the jurisdiction of Mr. Fessenden, that they help swell the item of interest, and are not capable of being separated from the award, which must therefore be regarded as altogether invalid. He claims that they are excluded by the phrase in the contract, "taking the annexed statements of disbursements and collections as correct to this date," which phrase, he argues, cuts off all claim for any disbursement previous to December 15, 1869.

But we cannot give it this effect. "Correct" could not have meant complete, so as to exclude all omitted items of disbursements or collections; for the business of the agency was to cease from that time, except the collection of bills for stones previously sold and delivered, and there could have been nothing to which the stipulation that Cutter should "adjust and settle all the mutual accounts," could apply, if nothing remained to be done but the mere arithmetical computation of interest and commissions.

We think that the meaning and intent of the phrase is not that the schedules should be peremptorily deemed to include all that was to be the subject of adjustment, except the amount of interest and commissions, and the credits to be given for collections subsequently made, but that the schedules should be taken to be correct as far as they went, and as to the items therein specified. The defendant argues, that the stipulation that a particular claim of Adams for expense on stone sold Isaiah Blood, (mention of which is made in the schedules,) should be the subject of further investigation, is tantamount to an exclusion of all other claims for expenses up to that time. This does not follow. It was because the stone sold to Blood, and the claim for duties and expenses on it appeared in the schedule, that it became necessary to provide specially for the correction of that item of an account, which was in all other respects to be taken as agreed to, so far as its statements went.

The tenor of the agreement to abide the determination of Mr. Fessenden, and pay the amount which should be found due by him in case Cutter did not adjust and settle before the first of May, is such, that mistakes made by him would not be the subject of inquiry or revision here. Nor does the ingenuity of counsel satisfy us that any were made, if they were subject to correction.

Another objection urged against the validity of the award is, that notice of the amount found due was not accompanied by a detailed statement of the items. As to this, the instruction was, that the award would not be vitiated for want of such statement, if neither party had called for it, and Mr. Fessenden had had the means of furnishing it at any time when requested. The case shows that this was the fact; that the statement which accompa-

nied the contract, and which was agreed to as correct, embodied the greater part of the details; that of the few remaining items not many were in dispute; and we think the call in the agreement is sufficiently answered by the preservation of the materials for the statement, without making such statement a part of the notice to the parties.

It is further objected that the award was not seasonably made, that it should have been made within three months after May 1, 1870, in order to enable Cutter or the defendant to pay according to the terms of the contract.

As the adjustment was to be made by Mr. Fessenden "by the fifteenth day of May, A. D. 1870, or as soon thereafter as the same can be completed," a reasonable time was allowable having regard to the character of the work and the position of the par-. ties. The jury were instructed hereupon that if the question depended merely upon the construction of the papers in the case the award must be held not seasonably made and that the material inquiry here was whether there had been a waiver as to the time of making the award not only on the part of Adams and Cutter but on the part of the defendant Macfarlane. We will consider the questions that arise here upon the assumption that the judge did not err in holding that the award was not seasonably made and that it could be deemed binding only in case there was a waiver.

It is well settled that parol proof of a subsequent waiver of any of the stipulations in a written contract, or of a right under such contract is admissible even when the contract is under seal, and that such waiver may be inferred from the acts of the parties and the proof in the case. *Brinley* v. *Tibbets,* 7 Maine, 71. *Gage* v. *Coombs & trs.,* 7 Maine, 394. *Medomak Bank* v. *Curtis,* 24 Maine, 36. *Wiggin* v. *Goodwin,* 63 Maine, 389. *Cummings* v. *Arnold,* 3 Metc., 486. *Monroe* v. *Perkins,* 9 Pick., 298.

The instruction, if there was evidence upon which to base the claim of waiver, was unexceptionable. Such a waiver by the defendant of any objection arising from the delay in making up the award by Fessenden is directly alleged in the writ.

We think there was evidence which justified both the instruc-

tion and the finding of the jury that there was such a waiver. It is impossible to read the letter of Macfarlane to Cutter without believing that the writer intended at that time that Cutter should be present at that hearing as his agent to protect his interests—that he did not at that time intend to set up such a claim as is now preferred in his behalf. He suggests that if Fessenden can be induced not to proceed there will be a failure of an adjustment by reference and then perhaps, a satisfactory arrangement may be procured.

The defendant and Cutter were interested to have all the delay that could be obtained.

By the agreement of the 15th December, 1869, Macfarlane had bound himself unconditionally and by an independent stipulation to see to it that Cutter should settle and pay what was in fact due.

The procurement of an adjustment and statement by Fessenden was only an alternative arrangement to save litigation about the items of the account in court ; it was permissive merely, and not obligatory upon the plaintiff, who could have maintained his suit without it upon Cutter's failure to adjust and pay according to the agreement, and would be exposed only to the additional burden of proving the items of his account to the jury. Under these circumstances it is apparent that both Cutter and the defendant had much to gain and nothing to lose by the keeping back of the award. The testimony of Mr. Fessenden shows that what Cutter said before and at the time of the hearing amounted to an express waiver with regard to this matter of time and covers the delay before and after the hearing when it is taken in connection with the testimony of the referee as to the cause of the delay. Cutter is not called by the defendant and the defendant in his own testimony does not deny that Cutter was acting by his authority and for his benefit in requesting Mr. Fessenden to take his own time for making the award. There is a preponderance of evidence in favor of the waiver alleged in the first count.

It is claimed that there was an erroneous instruction which permitted the jury to find a waiver by the defendant of the fraud which he alleges the plaintiff used to procure the guaranty from

him and that the jury found this waiver also without sufficient evidence. We do not think the instructions can properly be thus construed. The jury were repeatedly and emphatically instructed that the first question to be settled was, whether the defendants guaranty was procured by fraudulent misrepresentation or concealment of material facts, and if that were settled in defendant's favor they need go no further in the examination of the case, for their verdict must be for the defendant.

The instruction which it is claimed subsequently furnished the jury a different rule runs thus : "If the jury should be satisfied from the evidence that the defendant did sign the guaranty under a misapprehension of the amount of the plaintiff's claim and that he was deceived as to the amount, if they should be satisfied that he was undeceived before the hearing by Fessenden, and by himself or his agent proceeded to the hearing with full knowledge and without objection, he cannot now be entitled to repudiate his guaranty for that cause."

The jury could not have understood this as revoking or revising the previous reiterated directions to find for the defendant without further considering the case if they settled the question of fraud in his favor. Nothing is said in it about fraud or waiver. The instruction differs widely from those which relate to the question of waiver in connection with the delay in the award. It covers a case of misapprehension by defendant, of mistake, or of self-deception as to the amount of liability he was incurring, but it has no connection with, or bearing upon, the positive instructions given with regard to the effect of willful misrepresentation or willful concealment on the part of the plaintiff. This last the jury were told was "a vital question," "which lies at the threshold of the case," and if settled against the plaintiff, "of course it would be unnecessary to consider the case further."

Limited to a case of misapprehension or self-deception we suppose it would not be contended that the instruction gives the defendant any cause for exception.

The jury were instructed that as a condition precedent to the fulfillment of the agreement on the part of Cutter it was necessary for Adams to furnish his books and accounts and if such an

adjustment was defeated by any act or failure of the plaintiff then he would not be entitled to recover on either count.

The defendant's counsel contends that upon this point the jury erred. But we think they were justified in finding that the delay was throughout the fault of Cutter, except so far as it was caused by the personal engagements of the referee, to which the express waiver applies.

Under the instructions given, the verdict for the plaintiff was made to depend upon the finding by the jury that Adams was not guilty of the alleged fraud, that the failure to adjust according to the undertaking in the contract was the fault of Cutter and that this defendant through Cutter as his agent waived the implied stipulation that the adjustment by Fessenden should be more promptly made if it was to be relied on as conclusive upon the question of amount.

The defendant has no reason to complain that the case was made to turn upon these questions and, while they were fairly disputable, there is nothing in the testimony so conclusive in favor of the defendant's view as to justify us in setting aside the verdict. There is no pretense that there was ever any binding agreement between Adams and Cutter to postpone the time of payment without the knowledge and assent of this defendant.

Of the second series of instructions requested, the first, second and third were rightly withheld. The contract clearly bound Cutter, and the defendant as his surety, by a distinct, positive and independent stipulation, to adjust and settle before May 1, 1870, and to pay what might be found due; and there was a breach of this which made the defendant liable (unless the plaintiff had done something to discharge him,) to pay what a jury might ultimately find due, if no adjustment was made by Fessenden. If the plaintiff saw fit to dispose of any question as to amount before bringing his action by procuring an *ex parte* adjustment by Fessenden, he was at liberty to do it. By a subsequent understanding between the parties, apparently, this was converted into a hearing, at which Cutter might appear, and the delay which resulted, was assented to by the defendant, and manifestly was in no respect prejudicial to him.

The fourth in the second series of instructions was given substantially :

Neither Cutter nor the defendant could be exonerated by the fact that the plaintiff claimed more than he was found entitled to recover.    Upon the presentation of his books and accounts, it was incumbent on them to ascertain what was justly due, and settle, or offer to settle upon that basis.    This they neglected.

. We have considered all the objections which were relied on in the able argument for the defendant, and are satisfied that the instructions were quite as favorable to the defendant as the law would allow, and that there was no bias, corruption, or evident mistake on the part of the jury which requires us to send the case to a new trial.        *Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.