(No. 22108.—
Mabel Bennett, Defendant in Error, *vs.* The Illinois Power and Light Corporation, Plaintiff in Error.

*Opinion filed February 23, 1934—Rehearing denied April 6, 1934.*

STONE, DEYOUNG and FARTHING, JJ., dissenting.

THOMAS J. WELCH, and E. BENTLEY HAMILTON, for plaintiff in error.

JAMES H. ANDREWS, GREGG A. YOUNG, and HARPER ANDREWS, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

The defendant in error, Mabel Bennett, as plaintiff in the city court of Kewanee, recovered a verdict and judgment for $9600 against the plaintiff in error. The Appellate Court for the Second District having affirmed the judgment, the cause is here on writ of *certiorari* by leave of this court.

The plaintiff's declaration was in two counts. The first count alleged that she was riding in a buggy behind a horse which was driven by a nineteen-year-old boy; that the defendant had, shortly prior to this occasion, negligently, carelessly and unlawfully placed upon the south side of the public highway three spools of electric transmission wire, which were round in form and about four feet in diameter and stood edgewise in the grass and weeds along the south side of the beaten track of the highway; that they were of aluminum color and stood twelve or fifteen feet north of the hedge fence along the south side of the highway. It then proceeds to allege the facts of due care, the horse becoming frightened at the spools of wire, the

resultant injury, etc. The second count is based upon an alleged violation of paragraph 167 of the Road and Bridge act, (Cahill's Stat. 1933, p. 2426,) which, in so far as material here, is as follows: "If any person shall injure, or obstruct a public road by felling a tree or trees in, upon or across the same, or by placing or leaving any other obstruction thereon, or encroaching upon the same with any fence, or by plowing or digging any ditch or other opening thereon, or by turning a current of water so as to saturate or wash the same, or shall leave the cuttings of any hedge thereon, for more than ten days, he shall forfeit for every such offense a sum not less than three dollars nor more than ten dollars; and in case of placing any obstruction on the highway, an additional sum of not exceeding three dollars per day for every day he shall suffer such obstruction to remain after he has been ordered to remove the same by the commissioners of highways," etc.

It is alleged in the second count, which, as above noted, is intended to be based upon this statute, that shortly prior to the accident the defendant had "negligently placed" along the south side of the beaten track of the road three large spools of electric transmission wire, and that they were left there by the defendant and remained there contrary to the statute in such case made and provided; that they were calculated to frighten horses driven along the highway, and that as the plaintiff approached the point where the spools had been left and remained, the horse became frightened at the spools and ran away, injuring the plaintiff. The declaration further avers "that the defendant placed the spools of wire along and upon the south side of the public road in violation of the statute of the State of Illinois in such cases made and provided, and because of the violation of that certain statute the horse became frightened and ran away."

The defense, after various preliminary pleadings had been disposed of, was finally based upon a plea of general

issue and notice under the general issue of special matters in defense: (1) That the defendant was authorized by the Illinois Commerce Commission, under its certificate of convenience and necessity, to build the power line where it was being built; and (2) that at the time the spools were placed along the highway the defendant had leave and license of the owner of the fee adjoining the highway to use the same as it was being used. Copies of the right of way easement and the certificate of convenience and necessity were attached to the notice as exhibits.

All of the questions raised by the eight assignments of error can be disposed of by a consideration of the principal points as to whether or not there was a failure of proof under the allegations of the declaration, whether there was any actionable negligence shown by either the declaration or the proof, and whether or not anything done by the defendant was unlawful and at the same time the proximate cause of the alleged injury of the plaintiff.

As this court has many times said, it is elementary that recovery can only be had on the negligence charged in the declaration. (*Ratner* v. *Chicago City Railway Co.* 233 Ill. 169; *Chicago, Burlington and Quincy Railroad Co.* v. *Levy,* 160 id. 385; *Peterson* v. *Sears, Roebuck & Co.* 242 id. 38, and cases there cited.) It is the gist of plaintiff's first count that the defendants "negligently, carelessly and unlawfully placed upon the south side of said public highway three spools of electric transmission wire," etc. It is the gist of the second count that the spools of wire were placed and left there in violation of the statute above referred to. It follows that if neither of these things has been proved or exists the plaintiff cannot be allowed to recover.

In considering the question of whether the spools were placed negligently, carelessly or unlawfully, the work which the defendant was doing, the title by which it was being prosecuted and the appliances being used must be consid-

ered. There is no dispute in the record but that the defendant was building the line in question pursuant to a certificate of convenience and necessity issued by the Illinois Commerce Commission, nor that the defendant had secured a suitable easement from the owner of the land adjoining the highway at the point in question for the erection of this power line and its incidental over-hang above the highway. Neither is° there any possible dispute that the spools in question were placed approximately under the overhanging arms to which the wire was later to be attached and that it was necessary for them to be there for the reasonably convenient carrying on of the work.

There is nothing in the record to show that the defendant did any affirmative thing other than was reasonably necessary for the prosecution of the work in which it was lawfully engaged. The coils of wire were brought to the place where they were to be used, were unloaded at that place in a suitable position for their proper use, and were well removed from the traveled or beaten portion of the highway to a place where the public utility company had a right to leave them under its easement from the owner of the fee. It is not even shown in the record or suggested in the argument that the defendant could have done anything to make these necessary and useful objects less frightening to so-called gentle horses.

The fact that a thing is well calculated to frighten a gentle horse cannot, in and of itself, make its use or presence at any particular place a basis for liability *ex delicto*. There must be something more in the case. If the thing itself is lawful and is being used in a lawful manner at a place and time where it may lawfully be, and if there is nothing negligent or malicious in its use, there can be no liability *ex delicto* arising therefrom. Such liability must arise from some negligent, malicious, willful or intentional breach of duty or of law. As this court and many others have said: "To constitute a tort there must

be the invasion of a legal right of the plaintiff—the violation of a legal duty of the defendant. Damages suffered without the invasion of a legal right or the violation of a legal duty are damages without injury."—*Gillman* v. *Chicago Railways Co.* 268 Ill. 305, on p. 309. See, also, 26 R. C. L. 757; 62 Corpus Juris, 1108; *Eastern Tennessee Telephone Co.* v. *Parsons,* 154 Ky. 801, 157 S. W. 584; *Simonds* v. *Maine Telephone and Telegraph Co.* 104 Me. 440, 72 Atl. 175; *Pettit* v. *New York Central and Hudson River Railroad Co.* 80 Hun, 86; *District of Columbia* v. *Moulton,* 182 U. S. 576.

The Supreme Court of the United States has passed on a very similar question, and its decision is important here. In the case of *District of Columbia* v. *Moulton, supra,* the facts shown were that a steam roller about eight feet long, eight feet wide and six feet high had broken down on a street and been left near the curbing. It was covered with a canvas cover, but whether this rendered it more or less frightful to a gentle horse is not stated in the opinion. In denying any liability on the part of the District of Columbia Mr. Justice White delivered the opinion and in part said: "The steam roller in question had been brought to the place where the accident occurred for a lawful purpose, viz., that of performing a duty enjoined upon the district to keep in repair the streets subject to its control. The use of an appliance such as a steam roller was a necessary means to a lawful end—a means essential to the performance of a duty imposed by law. It must therefore follow that if in the legitimate and proper use of such machine, with reasonable notice to the public of such use, an injury is occasioned to one of the public, such injury is *damnum absque injuria.* * * * The district, at best, was only chargeable with notice that the roller was an object which might frighten some horses of ordinary gentleness—not that it would inevitably do so. * * * The district, however, had a right to assume that

a driver of mature age was familiar with the habits and disposition of his horse and was possessed of the common knowledge respecting the tendency of steam rollers to occasionally frighten such animals. The roller being lawfully on the street, the district was not bound to guard against the consequences of a voluntary attempt to drive by this roller. Certainly, if a driver believed that it would not be the natural and proper consequence of such an attempt that his safety would be endangered, the district ought not to be charged with notice that the attempt would be dangerous either to life or limb."

The Kentucky case of *Eastern Tennessee Telephone Co.* v. *Parsons, supra,* is almost identical in its facts with the case at bar. A telephone line was being erected pursuant to lawful authority and rolls of wire were distributed along the place of work at convenient points. The injured person, Mrs. Parsons, was driving a supposedly gentle horse, which became frightened at the wire, ran away and caused her injuries. The court held that the case should not have been submitted to a jury. In the opinion the court says: "To say that a telephone company in the erection of a new line must be subjected to liability because in the progress of its work it finds it indispensable to have coils of wire and other implements and material on the side of the road that may frighten reasonably gentle horses, would be to virtually deny telephone companies the right to carry on, in the ordinary way, their business, or else subject them to unreasonable expense and inconvenience in protecting every tool or implement or other thing that might at some time frighten some person's horse. It is true, as argued by counsel for Mrs. Parsons, that the general rule in cases like this is that it is for the jury to say whether the thing complained of was calculated to frighten a reasonably gentle horse; but this does not mean that every time a horse becomes frightened at some object rightfully placed on the side of the road the question must be left to the jury, or

that in every case in which the jury find that the object was calculated to frighten a reasonably gentle horse the judgment must stand. It is only the right of the jury to pass on questions like this when there is reasonable ground for a difference of opinion, under all the circumstances, whether the object was lawfully or unlawfully placed where it was, and was of such size, shape or appearance as would be reasonably calculated to frighten a horse. A horse might become frightened at any kind of a tool or implement of the simplest kind placed on the side of the road by a person having the right to so place and use it. It is a matter of common knowledge on the part of every person familiar with reasonably gentle horses, and especially old family horses, that they are likely to take fright at any time or place at the most trivial and unexpected things. Many of them scare every time they go by piles of rock on the side of the road although they pass them day after day for months. They will at times scare at pieces of paper, planks, ponies, hogs, cattle, and other things that they see and associate with day after day, so that no person can tell what a horse will or will not take fright at, and therefore it would be out of the question to say that everything that a horse might scare at would furnish the basis of an action for damages."

In the case of *Simonds* v. *Maine Telephone and Telegraph Co. supra,* the Supreme Court of Maine denied liability on facts substantially identical with the facts in the case we are now considering. That court says: "Having the right to erect and maintain its poles and string on them its wires and cables where it did in the street, the company had the concomitant right to use suitable appliances therefor and in reasonably needful places. For the work of stringing on the poles and the wires, and lead pipes inclosing them, some kind of a reel was appropriate and needful, and it needed to be in the street in the line of the poles. There is no suggestion in the evidence that any other kind

of a reel, larger, smaller or of different shape or color, would have been less likely to frighten horses, or that it could have been so located as to be still serviceable and less startling to horses. Indeed, so far as appears, the horse would have been equally frightened by the bright lead pipe coiled on the ground or in a cart. It is not the law that economic progress is to be arrested, or even turned aside, whenever a well-broken horse, carefully driven, is frightened or likely to be frightened thereby. To say that well-broken horses, carefully driven, must not be frightened, is to say that no new appliance, however useful, shall be used on or near highways. It is common knowledge that all horses, even those well broken and carefully driven, are liable to be frightened by any unaccustomed appearance or noise, and, indeed, by accustomed appearances and noises in unaccustomed situations; that they are susceptible to fright from the most trivial things; that their vagaries are unforeseeable, and that it is practically impossible to guard against them. On the other hand, it is equally common knowledge that well-broken horses can ordinarily be so accustomed to appearances and noises as not to be at all frightened by them. In this age of economic progress it is the more reasonable and workable, and hence the legal, rule that owners and drivers of horses should recognize that the highways are not exclusively for their use; that other new instrumentalities for transportation and transmission, and appliances for their construction and maintenance, are often legally allowed upon the highways, and that they should early accustom their horses to whatever new conditions thus arise and be on their guard against them. In this case it was as much incumbent on the plaintiff as on the defendant to foresee that his horse might be frightened by the reel or the lead pipe and have taken measures to avoid or prevent the possible consequences. The reel and the lead pipe being otherwise lawfully where and when they were in the street, the mere fact that they

were likely to frighten horses unaccustomed to them did not make their presence there unlawful. The consequences of the fright must therefore remain where they fell."

It is argued at some length that the placing and leaving of these spools of wire alongside the road constituted an obstruction of the public highway within the meaning of the statute above mentioned. No such strained construction can be placed upon the act.

It is attempted in the argument, which is based upon the statute, to inject an element of time into the case which we consider immaterial. It is urged that because the spools of wire are claimed to have remained on the highway for several days the act became unlawful and thereby rendered the defendant liable. It is a sufficient answer to this contention to point out that no such theory of the case was alleged in any count of the declaration. The frightening of a horse is a momentary matter, occupying a few seconds in time. So far as we can see, it would be as likely to happen five minutes after the spools had been unloaded as it would five days or five weeks thereafter. However, it is only necessary for us to decide and point out that the theory of the plaintiff was that the spools were unlawfully, negligently and carelessly placed where they were, and there is no count upon which a recovery could be had upon any theory that the length of time they remained there had anything to do with it. As Mr. Justice White said in the case of *District of Columbia* v. *Moulton, supra,* if the article in question was lawfully upon the street it might be lawfully allowed to remain there until its reasonable use was no longer necessary.

There is much argument in this case as to whether or not the question of variance between the declaration and the proof was properly preserved in the record. It is argued at great length by the defendant in error, with profuse citation of authority from this court, that it is not necessary for the plaintiff to prove all of the material allegations in

the declaration but it is sufficient if she proves enough of them to make out a cause of action. Conceding all of this to be well established, neither the argument nor the authority is pertinent to this case, because here there has been a complete and total failure to prove any actionable negligence. The issues should not have been submitted to the jury and a verdict should have been directed for the defendant.

The judgments of the Appellate Court for the Second District and of the city court of Kewanee are therefore reversed.

*Judgments reversed.*

Mr. JUSTICE FARTHING, dissenting:

I cannot agree with the opinion as expressed by the majority of the judges of this court in this case. By this decision the rule has been abrogated that the verdict of a jury in favor of the plaintiff, approved by the trial court's judgment and the affirmance of that judgment by the Appellate Court, determines finally all controverted questions of fact, and that this court may in such a case, where no other ground for reversal is presented, reverse the judgment only where there is no evidence whatever fairly tending to prove the allegations of the declaration. I am not willing to set aside these well established legal principles. The effect of this decision is, that under no circumstances can a highway be obstructed unless the materials which make up the obstruction are placed in the traveled part of the highway. Furthermore, that under no circumstances is it possible for a defendant to be guilty of negligence in placing objects on a highway, regardless of the nature and character of the objects and the time they were permitted to remain upon the highway, where the facts show that the objects in question caused a gentle horse to become frightened, resulting in the injury of the person driving such horse.

From the decision in this case it would appear that no decided case of any court of last resort contains a contrary holding. Quite the contrary is true, and the following excerpts and rules indicate that courts worthy of the highest respect have decided similar cases diametrically opposite to the decision in this case:

In *Lynn* v. *Hooper,* 93 Me. 46, the court said: "It is impossible to state a general rule by which it can be determined whether any particular objects constitute a nuisance or not. The question must depend on the conditions and circumstances in each case. Conditions vary. No two cases are alike, hence it is rare that one case can be a binding precedent in another. Its distance from the traveled·path, its relation·to fences and other objects, its height or depth from the road, its color, whether it is customarily found in similar places and under similar conditions, whether it is so situated that horses being driven come suddenly in sight of it, whether it is fluttering like a living thing—these and many other considerations must be taken into account in determining whether the object is a nuisance or is dangerous to public travel. This suggestion is fully borne out by an examination of the cases concerning objects which cause fright, some of which we cite: A pile of shingles—*Merrill* v. *Hampden,* 26 Me. 234; Evergreen tree in car—*Lawrence* v. *Mt. Vernon,* 35 Me. 100, *Dawson* v. *Bangor,* 42 Me. 522; a rock—*Card* v. *Ellsworth,* 65 Me. 152; a hole—*Spaulding* v. *Winslow,* 74 Me. 528; a pile of stones—*Clinton* v. *Howard,* 42 Conn. 294; a pile of plastering—*Dennock* v. *Suffield,* 30 Conn. 129; a tent—*Ayer* v. *Norwich,* 39 Conn. 376; a watering trough painted red—*Cushing* v. *Bedford,* 125 Mass. 526; bales of hay charred by fire—*Morse* v. *Richmond,* 41 Vt. 435; a hollow log blackened by fire—*Foshay* v. *Glen Haven,* 25 Wis. 288; sled with tubs on it—*Judd* v. *Fargo,* 107 Mass. 264. See, also, note in Elliott, Roads and Streets, 449." *Illinois Central Railroad Co.* v. *Griffin,* 184 Ill. 9.

It was held in *Fritsch* v. *Allegheny*, 91 Pa. 226, that whether or not it was negligence to permit the carcass of a dead horse to remain on the highway is for the jury to determine. Whether or not a pig sty containing pigs is an obstruction is a question for the jury. *Bartlett* v. *Hooksett*, 48 N. H. 18.

In *Topeka Water Co.* v. *Whiting*, 39 L. R. A. (Kan.) 90, a horse became frightened at a spurting water hydrant. The court overruled the contention of the water company that since it had the right to place the hydrant upon the street, the flushing of the main at the point being necessary and done in a proper way, there was no liability. The court said that the company had the right to place its hydrants in the street and to flush them, but it had no license or right to flush them at such a time or in such a manner as to impede travel or imperil the safety of those passing in the street. The license to flush carried with it the obligation to do so with reasonable care and due regard for the rights of others. Whether an object is such as is calculated to frighten a gentle and road-worthy horse is usually a question of fact for the jury to determine. The court said further that the protection and care which it is necessary to use in cases of this kind must be determined by the character of the risk and the nature of the threatened injury.

In the case at bar the jury by its verdict determined that the defendant was negligent in placing the spools of wire upon the roadway. The question of negligence was one of fact, and this court should not disturb it after the judgment had been affirmed in the Appellate Court.

Mr. JUSTICE DEYOUNG concurs in this dissent.

Mr. JUSTICE STONE, also dissenting.