WANDA NUNLEY, Plaintiff-Appellant, *v.* FRANK E. MARES, d/b/a Mares Service, *et al.,* Defendants-Appellees.

Third District   No. 82—614

Opinion filed May 4, 1983.—Rehearing denied June 7, 1983.

Louis E. Olivero, of Peru, for appellant.

T. Donald Henson and Robert M. Hansen, both of Herbolsheimer, Lannon, Henson, Duncan and Reagan, P.C., of La Salle, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Wanda Nunley appeals from the judgment of the circuit court entered against her after a jury verdict in favor of defendants Frank E. Mares, d/b/a Mares Service, and Ronald Veen. Plaintiff's action against the defendants was based upon alleged negligence and wilful and wanton misconduct by them in connection with a towing operation. The jury returned a general verdict for the defendants, and answered, in the negative, the following special interrogatory: "Was the negligence of the defendants a proximate cause of the injury to the plaintiff?" On appeal, plaintiff raises the following issues: (1) whether the verdict and answer to the special interrogatory are contrary to the manifest weight of the evidence; (2) whether the court erred in refusing two of plaintiff's instructions; (3) whether the court erred in excluding evidence that the defendant had forfeited his bond on a traffic citation issued as a result of the accident; (4) whether defense counsel engaged in improper and prejudicial closing argument; (5) whether the court improperly restricted the cross-examination of a defense expert witness; (6) whether reversal is required because the defense failed to comply with Rule 215(c); and (7) whether the court abused its discretion in ruling that the jury could begin deliberations

at a late hour.

The record discloses that on January 18, 1977, around 1:30 p.m., plaintiff was driving northbound on Dimmick Road, a two-lane black-top highway in La Salle County. It was a sunny day and plaintiff was approximately one mile north of Route 351, on Dimmick Road, driving her 1963 Chevrolet. At the same time, some distance ahead of plaintiff Nunley on the road, was the defendant Ronald Veen, who was engaged in a towing operation under the employ of Mares Service. A disabled semi-truck was located on the right shoulder (east side) of Dimmick Road. On the left side (west side) of the road was the Mares' tow truck with Veen in charge. Evidence indicated that the cab of the semi had been pulled up to the east edge of the highway, and at the time of the collision, was several feet onto the roadway. The Mares wrecker was positioned perpendicular to the highway, with the rear end of the wrecker onto and over the west edge of the pavement, facing the disabled semi on the other side of the road. The wrecker, according to testimony, extended out about 3½ feet on the paved part of the west half of the highway.

Veen had run two steel cables from the back of the wrecker to the front of the disabled semi, for the purpose of pulling the semi onto the highway. Veen testified that he had all his lights on the wrecker in operation, including revolving mars lights and all body lights. Before he hooked the cables to the semi, Veen had stopped all approaching traffic by putting his hands up. At that time, the cables were lying on the pavement surface. Two or three southbound vehicles were stopped north of the towing operation, and one northbound vehicle was stopped south of the operation. The northbound vehicle, hereinafter referred to as the Jupe auto, was driven by a woman and had stopped between 75 and 140 feet south of the cables. There was some variance in the trial evidence as to that distance. Veen testified that the northbound vehicle had not only stopped on the highway, but that the driver had activated its four-way warning flashers.

According to Veen, plaintiff Nunley pulled up behind the Jupe auto, already stopped in the northbound lane, and stopped her auto as well. Veen, at this time, was standing at the rear of the wrecker. Veen's testimony was that Nunley stopped about a car length behind the Jupe auto, or about 150 feet from the cables in the road. When Veen saw that all traffic was stopped, he began to tighten the cables, with the winch mechanism on the wrecker. The cables were tightened, an operation which took about 30 seconds. Then, according to Veen, he heard a car accelerate, and, turning to the south, he observed Nunley's auto coming around the stopped Jupe vehicle in front of her. He

estimated that the Nunley auto was at 15 to 20 mph and accelerating. He ran from beside the wrecker into the center of the road, waving his arms at Nunley and yelling "stop," in an attempt to prevent further progress by Nunley. His efforts were unavailing, and Nunley drove her auto into the taut steel cables stretched over the highway between the wrecker and the disabled semi. Veen stated that after the accident, Nunley admitted that she saw him as he ran to stop her, but she stated that she had not slowed down because he had "scared" her. The evidence also indicated that Veen had not posted any warning flags or fusees on the highway, nor had a flag been attached to the cable. Defendant Mares testified that the flags are not used on the cable, because they may get caught in the pulleys when the winch is in operation.

Plaintiff Nunley's version of the events surrounding the accident varied in considerable detail from that testified to by defendant Veen. Nunley stated that after passing a viaduct, she slowed to pass a car in the northbound lane, which she thought was stalled on the road. She saw no flashers on the auto. She stated that as she passed the vehicle, she noticed the wrecker on the left (or west) side of the highway and the semi on the east shoulder of the road. She stated that she saw no other cars stopped, nor did she notice anything on the highway. She slowed to observe but did not stop her auto. She testified that she saw no person on or off the highway and nothing to indicate to her not to proceed past the towing operation. Nunley did admit to seeing the yellow flashing lights of the wrecker prior to the accident, and admitted that she "stepped on it" just before striking the cable. Another witness, Loraine Jupe, was the driver of the northbound auto which had stopped ahead of Nunley in the northbound lane. Mrs. Jupe testified that the wrecker operator had flagged her down, and that she had stopped and put her flashers on. She could observe the cable in the highway. Mrs. Jupe noticed, as plaintiff's car came around hers, that the wrecker operator tried to flag down Nunley, standing in front of the cable. She also testified to overhearing Nunley admit that the accident was her fault, and that she had not noticed the cable, as she was watching the truck.

The defense evidence indicated that Veen had been instructed by his employer, Frank Mares, to put a flag on a cable crossing the road, in order to stop traffic. Veen had also been instructed generally on the placement of warning signals and on informing the police if the wrecker's operation would necessitate slowing or stopping the flow of traffic.

As a result of the accident, plaintiff Nunley was treated for neck

and back injuries, as well as a lacerated lip. Her medical evidence indicated disc syndrome, caused by a herniated disc, which could be permanent and require future medical treatment as well. The medical diagnosis and the severity of any injury was disputed by the defendants.

The jury returned a verdict for the defendants, answering in the negative a special interrogatory which asked: "Was the defendant's negligence a proximate cause of the plaintiff's injuries?"

■ Plaintiff Nunley's first contention on appeal is that the verdict of the jury and its answer to the special interrogatory were contrary to the manifest weight of the evidence. We disagree, for when the disputed questions of fact are resolved in defendants' favor, as they must be on the verdict (*Lynch v. Board of Education* (1979), 72 Ill. App. 3d 317, 322, 390 N.E.2d 526), the evidence in the record clearly supports a conclusion and finding that it was plaintiff's negligence, in disregarding the available warnings to stop, which was the proximate cause of her injuries. The flashers and other warning lights on the wrecker were all activated, and plaintiff admitted seeing them. Further, the wrecker was positioned in such a manner as to indicate an ongoing operation on the highway. Plaintiff Nunley observed the disabled semi off the road on the other side of the road from the wrecker. Vehicles in the southbound lane had stopped on the other side of the wrecker, and the Jupe auto was stopped, with flashers activated, in Nunley's northbound lane of traffic, some distance from the towing operation. All of the activity on the highway, including flashers on both wrecker and Jupe auto, indicated that caution was necessary. Further evidence indicates that Nunley initially stopped her auto behind the Jupe auto, but then unexpectedly swerved around it, accelerating the entire time and driving into the taut cable, after disregarding defendant Veen's frantic attempts, from the middle of the road, to stop her before hitting the cable. The record indicates that numerous warnings not to proceed were present and that plaintiff Nunley ignored them by proceeding in the manner she did. The acts of plaintiff Nunley in disregarding the available warnings to stop and proceeding without caution are unreasonable, and the jury could properly have concluded that it was plaintiff's actions therein, and not any act or omission of the defendants, which was the proximate cause of her injuries. The facts support fully the verdict and the answer to the special interrogatory. Our decision in *Walsh v. Central Illinois Public Service Co.* (1918), 212 Ill. App. 668 (abstract), an unpublished opinion, is inapposite, involving as it did a permanent guy wire placed over a well-worn track along a highway, without any advance warning

of any kind as to its presence. The general verdict is supported by the evidence which indicates plaintiff's negligence as the cause of her injuries. Additionally, we find no ambiguity in the special interrogatory, as is suggested by plaintiff's counsel. The clear focus of the interrogatory was the question of proximate cause, not the questions of negligence and injury. The interrogatory assumed defendant's negligence and injury to plaintiff, and focused upon the causation issue. As determined, the evidence was sufficient for the jury to have found that it was not any negligence of the defendants, but negligence by the plaintiff, that was the proximate cause of the injuries. Plaintiff correctly notes that if the evidence indicates that plaintiff's negligence was reasonably foreseeable, it will not relieve the defendant of liability. (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15, 413 N.E.2d 1242.) In the instant case, however, the conduct of the plaintiff in proceeding forward without caution, in the face of numerous warnings to be cautious, and after stopping initially in the face of such warnings, was not reasonably foreseeable. *Bentley* is not at all controlling, for there was no clear advance warning, as in this case, nor was the plaintiff guilty of disregarding clear warnings. We conclude, on the basis of the evidence viewed favorably to defendants, that the verdict and special interrogatory were not contrary to the manifest weight of the evidence. The record supports a jury conclusion that the injuries suffered by the plaintiff were proximately caused by her own negligence, and not by any negligence on the part of the defendants.

■ We next turn to the issues raised concerning two jury instructions tendered by plaintiff, but refused by the trial court. Plaintiff tendered its instruction No. 26, which stated:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'No person shall operate any motor vehicle at the second division upon any highway outside an urban district at any time unless there is carried in such vehicle the following equipment, except as provided in paragraph (b) of the Section:

1. At least 3 liquid-burning flares, or 3 red electric lanterns or 3 portable red emergency reflectors, each of which is capable of being seen and distinguished at a distance of not less than 500 feet when lighted lamps are required, provided that emergency reflectors meeting the requirements of Federal Motor Vehicle Safety Standard No. 125 shall be deemed acceptable as regards visibility and color; and

2. At least 3 red-burning 15-minute fusees unless red electric lanterns or portable red emergency reflectors are carried; and

3. At least 2 red-cloth flags, not less than 12 inches square, with standards to support flags or in lieu thereof, 2 portable emergency reflectors meeting the requirements of Federal Motor Vehicle Safety Standard No. 125.

* * *

(f) Whenever any vehicle of a type referred to in this Section is disabled upon any roadway or shoulder thereof outside an urban district or on any controlled access highway within an urban district at any time when the display of fusees, flare, red electric lanterns or portable red emergency reflectors are not required, the driver of the vehicle shall display 2 red-cloth flags or 2 portable emergency reflectors meeting the requirements of Federal Motor Vehicle Safety Standard No. 125 upon the roadway or shoulder in the lane of traffic occupied by the disabled vehicle in the following order:

One at a distance of approximately 100 feet in advance of the vehicle; and

One at a distance of approximately 100 feet to the rear of the vehicle.'

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the party was negligent before and at the time of the occurrence."

This instruction is predicated upon section 12—702 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1981, ch. 95½, par. 12—702.) We find that the trial court correctly refused this instruction, as there was no evidence presented of a violation of the statutory provision. There was no evidence to indicate that the defendants failed to have the required safety equipment in their wrecker. The evidence, which was uncontradicted, indicated that they did have all the requisite warning equipment. Thus, the first portion of the statute did not apply to the instant case, as the evidence showed no violation of its requirements. The same is true with respect to subsection (f) of the statute, requiring the drivers of *disabled vehicles* to post warnings around such vehicle when it is disabled upon a roadway. (Ill. Rev. Stat. 1981, ch. 95½, par. 12—702(f).) This section had application to the driver or operator of the disabled semi, but not the defendants, as operators of the tow truck, which was not a disabled vehicle. Defendant Veen was not the driver or operator of a disabled vehicle, but rather the operator of the wrecker aiding the disabled vehicle. As the plaintiff notes, driver is

defined in the Illinois Vehicle Code as every person "who drives or has actual physical control of a vehicle" (Ill. Rev. Stat. 1981, ch. 95½, par. 1—116), but we find the intent of sections 12—702 and 1—116, to place the obligation to warn upon the person in control of the vehicle, in its functional operation of a vehicle. So far as the record shows, Veen had not driven the vehicle, nor been in operational control of the disabled semi. Veen exercised limited custody, and limited external, nonoperational control over the vehicle, in his position as wrecker-operator. He was not a driver within the meaning of section 12—702. We find that the intent of the statutory provision was to impose upon the driver of a disabled vehicle the duty to give the stated warnings, but that it was not the intent to impose such duties upon an operator of a wrecker who is involved in the towing operation of a disabled vehicle. This conclusion does not establish that the operator in charge of a towing operation has no duty to warn, for he clearly does (*Barango v. E. L. Hedstrom Coal Co.* (1956), 12 Ill. App. 2d 118, 138 N.E.2d 829). In the instant case, the issues concerning the defendants' failure to warn were put before the jury through other instructions, and were vigorously argued by plaintiff's counsel. We find only that the instruction based upon section 12—702 was properly refused, as neither portion of the instruction was shown by the evidence to have been violated by the defendants in the instant case.

■ Error is also asserted in the court's refusal to give plaintiff's instruction No. 23, which stated:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
>> 'If any person injures or obstructs a public highway by *** placing or leaving any other obstruction thereon *** he shall be guilty of a petty offense ***.'
>
> If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the party was negligent before and at the time of the occurrence."

This instruction is based upon a portion of section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 9—117). The court found that the words "guilty of a petty offense" were prejudicial, as indicating criminal conduct, and could thereby mislead the jury into thinking that the defendant was guilty of violating the law by placing a cable across the road during a towing operation.

We find the court properly refused this instruction. It clearly would have injected the prejudice attendant with criminal sanctions

into the case. Furthermore, we find that the statutory provision upon which the instruction was based had no application to the facts in the instant case. The statute addresses itself specifically to highway obstructions in the nature of trees, fences, ditches, plowing and flooding. While the broad language of the statute ("any other obstruction") would arguably include any manner of obstruction, including perhaps even warning flags or lights, a reading of the provision, in its entirety, evidences no intent to punish wrecker operators, who in the course of their operations must necessarily place some equipment on the highway. (See *Bennett v. Illinois Power & Light Corp.* (1934), 355 Ill. 564, 573, 189 N.E. 899; *cf. Jones v. Traver* (1934), 275 Ill. App. 181, 190-91; *Tolman & Co. v. City of Chicago* (1909), 240 Ill. 268.) It would be unreasonable to find that the legislature intended to make criminal the otherwise lawful temporary obstructions of highways by wrecker operators, where the obstruction was necessary and pursuant to an attempt to remove a disabled vehicle, itself a dangerous condition. We find the court properly determined that this statute did not apply, and there was no evidence indicating a violation of it by the defendants. Even were we to adopt plaintiff's strained construction, we would find the court's refusal proper, given the prejudicial impact of the "petty offense" language and the presence of other instructions which adequately instructed the jury as to the defendants' duties in the instant case.

Plaintiff's next issue raised on appeal is whether the court erred in excluding evidence that the defendant Veen had received a traffic ticket for improper parking on a roadway, for which he posted $25 bond. The bond was forfeited and a guilty finding entered by the circuit court. The plaintiff asserts error by the court in refusing to admit the evidence and urges this court to adopt a position permitting evidence of the conviction of a traffic offense, after forfeiture of bond, in a subsequent civil suit, as *prima facie* evidence of the facts upon which the conviction is based. We decline to do so, and find no error in the court's decision on this evidence. In *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, the supreme court held that a battery conviction in a criminal case could be admitted into evidence in a subsequent personal injury suit, as *prima facie* evidence that the defendant had committed battery upon the plaintiff. In so doing, the court emphasized the seriousness of the criminal offense charged and the fact of defendant's prior representation by counsel. *Thornton* adopted the rule as set forth in *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 55-63, 203 N.E.2d 160, wherein the appellate court held that certain criminal convictions were admissible in later civil proceedings, regard-

less of whether the offense was designated a felony or misdemeanor. An important focus in *Smith v. Andrews,* emphasized in *Thornton,* was the seriousness of the offense and the incentive to contest it, factors, which when present, lend credibility to the conviction. The court stated:

"We have taken pains to point out the nature of the proceeding which resulted in the defendant's conviction, because the nature of the proceeding has an important bearing upon the admissibility of the conviction in a later case. From what we know about the steps which led to the conviction, there is every reason to believe that the conviction was the just result of the adversary process. The charge was a serious one, and the defendant, facing a serious penalty in the event of conviction, obviously had every incentive to make a vigorous defense. He was represented by counsel. He was tried by a jury. While we do not say that all of these elements must necessarily be present in order for the conviction to be admissible, we would not want our decision in this case to be interpreted as a holding that every conviction following a plea of not guilty is admissible in evidence in a later case involving the facts upon which the conviction is based. *** For example, our holding in this case would not be authority for the admissibility of a traffic court conviction in a later civil case arising out of a traffic accident. Defendants in traffic cases are frequently unrepresented by counsel, and the proceedings are relatively informal. In view of the comparatively modest penalty a defendant faces on a judgment of conviction, the charge is rarely contested with the vigor that characterizes the adversary system at its best." 54 Ill. App. 2d 51, 61-62.

In the instant case, the defendant Veen did not appear on the traffic violation, but submitted to a bond forfeiture on the charge. There was no plea of guilty as an admission. (See *Barnes v. Croston* (1969), 108 Ill. App. 2d 182, 247 N.E.2d 1.) Defendant was unrepresented by counsel, did not appear, nor was hearing held on the charges. Furthermore, the sanctions for the offense were minor, and not such as to ensure the requisite adversary procedure. A bond forfeiture is even less an admission than a plea of *nolo contendere,* which, as a general rule has been denied admissibility in subsequent civil proceedings. (Annot., 18 A.L.R.2d 1287, sec. 5 (1951).) We find the court properly excluded from evidence the fact that defendant Veen had forfeited bond on the prior, minor traffic charge against him.

■■ The next issue raised by plaintiff is whether the comments of defense counsel during closing argument were so prejudicial as to deprive the plaintiff of a fair trial. It is alleged that defense counsel improperly injected his personal opinion into the case in his argument to such an extent as to require reversal. Responding defense counsel notes that the argument from both sides was often heated and combative and asserts that on several occasions his comments were responsive to statements from plaintiff's counsel during closing argument. No useful purpose would be served by a cataloging of the various comments objected to. We have reviewed the arguments by both sides, with a careful eye to improprieties, and we find no reversible error. (See *Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 370 N.E.2d 679. See also *Clemons v. Alton & Southern R.R. Co.* (1977), 56 Ill. App. 3d 328, 370 N.E.2d 679.) The record herein reveals that counsel for each side felt strongly the correctness of his party's position and expressed those feelings to the jury. The arguments from both counsel reflected those feelings, and the result was a combative atmosphere. There were improprieties in the argument, but given the overall tone, we find no reversible error. In *Pumo v. Foltynewicz* (1980), 82 Ill. App. 3d 178, 181, 402 N.E.2d 900, we found that although improper argument may have occurred in the court below, no reversal should result when the trial, as a whole, was fair and there was sufficient evidence to support the jury's verdict. Here, while counsel may have overstepped the bounds of propriety, the record indicates a hotly contested case throughout trial, and the trial, as a whole, was fair. The sufficiency of the evidence to support the verdict was clear. We would also note, on this issue, that no objection was made by plaintiff's counsel to the remarks and argument of the defense attorney. Contrary to suggestions by the plaintiff, the remarks herein do not rise to the level of prejudice found in the cases of *Ryan v. Blakely* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604, or *Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 381 N.E.2d 383. Therefore, we do not agree with plaintiff's argument that reversal is required because of the improper argument of defense counsel.

■■ Plaintiff next alleges error in the trial court's refusal to allow counsel to cross-examine defense expert witness Dr. Betasso concerning the plaintiff's cervical spine. Plaintiff's counsel stated that upon cross-examining Dr. Betasso, he discovered in the medical file a radiologist's report which disclosed that there were post-traumatic changes in the plaintiff's cervical spine. Counsel then sought to introduce the report into evidence and to interrogate Dr. Betasso concern-

ing changes in the cervical spine, both based upon the discovery of the previously undisclosed X-ray report. On direct examination, Dr. Betasso was examined solely with respect to the condition of plaintiff's lumbar spine, and no inquiry into the cervical spine was made on direct. The court refused to permit cross-examination on the cervical spine, finding that such questioning was beyond the scope of direct examination. It offered to permit counsel to call Dr. Betasso in rebuttal, which offer was not taken up by the plaintiff. Plaintiff did attempt to elicit testimony from Dr. Arellano, who had prepared the report, as a rebuttal witness, arguing that the X-ray report had been concealed from him despite a continuing motion to supplement discovery. The court ruled that any such examination was beyond the scope of the direct examination. Offers of proof, as to both Betasso's and Arellano's testimony, were made by plaintiff's counsel. Neither offer of proof indicated severe post-traumatic changes in the plaintiff's cervical spine. Moreover, plaintiff's own medical witnesses fully addressed the question of changes in the cervical spine, and concluded that such changes had occurred. It is clear that the scope of cross-examination is limited to matters brought out on direct examination, and also that the scope of cross-examination rests within the discretion of the trial court. (*Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 553-54, 170 N.E.2d 564.) However, as *Muscarello* indicates, in determining the scope of direct examination, the court should not give a narrow or technical application to the rule. (20 Ill. 2d 548, 553.) In *Muscarello,* the court found an abuse of discretion, where (1) the party had engaged in an intentional deception respecting a medical report; (2) the evidence therein went to a critical issue in the case; and (3) the rights of an infant were involved in the case. (20 Ill. 2d 548, 555.) In the instant case, there is nothing in the record to indicate any intentional deception on the part of defense counsel respecting the X-ray report. Counsel explained that he had not received the X-ray report, and could not provide what he himself had not received. Also, as defense counsel points out, plaintiff could have obtained Dr. Betasso's entire file, had plaintiff subpoenaed it. Furthermore, the evidence sought to be introduced through cross-examination of Betasso was not of crucial importance to the plaintiff. Betasso and Arellano's testimony, as brought forth in the offer of proof, indicated that there was no severe post-traumatic changes in the cervical spine. This testimony was not particularly helpful to the plaintiff, and, even assuming error, its omission, especially in light of defense expert evidence showing a severe post-traumatic change, was not such as to require a reversal. While the court could certainly have permitted the cross-examination,

given the unexpected discovery of the previously undisclosed report, any error in refusing such cross-examination was not so prejudicial as to require a reversal, for the jury's verdict is fully sustainable on the question of liability, apart of damages questions. We find no reversible error in the court's decisions on these questions.

The final issue is whether there was an abuse of discretion in permitting the jury to begin deliberations at a late hour. The record indicates that the judge inquired of the jury whether they would prefer to get the case the day of closing arguments, or whether they would prefer to receive it the following day. The court noted the jury's unanimous decision to begin deliberations after the close of evidence and closing arguments. There is no evidence of jury fatigue in the record, nor do we find that the speed of deliberations indicated fatigue. While there was considerable testimony and exhibits, the evidence of the plaintiff's own negligence as the proximate cause was not unduly complex. Nor do we find evidence that counsel's condition, from not having eaten, interfered with his arguments to the jury. In short, we find no prejudice and no abuse of discretion from the case having been submitted to the jury at the hour at which it was submitted.

For the reasons stated, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.