Waverly Naslund, Executor of the Last Will and Testament of Mary Cecil Naslund, Deceased, Plaintiff-Appellee, v. Robert W. Watts, Haskell D. Gill and Donald C. Schuster, Partners Doing Business as Johnson-Gill-Schuster Funeral Home, and Albert M. Raisback, Defendants-Appellants.

Gen. No. 66–43.

Third District.

March 13, 1967.

Stuart, Neagle & West, of Galesburg, and Cassidy, Cassidy, Quinn & Lindholm, of Peoria, for appellants.

Barash & Stoerzbach, of Galesburg, for appellee.

CORYN, J.

This is an appeal by all of the defendants from a. judgment in the amount of $15,000 entered against them upon a verdict in a suit for wrongful death under Ill Rev Stats, c 70, § 1, and for funeral expenses under the Family Expense Statute, Ill Rev Stats, c 68, § 15. The controversy arises from a motor vehicle collision which occurred at approximately 9:30 p. m., July 15, 1963, on U. S. Highway 34 in Knox County, north of Galesburg. A dump truck, owned and operated by defendant, Robert W. Watts, collided with an ambulance owned by Haskell D. Gill and Donald C. Schuster, d/b/a Johnson-Gill-Schuster Funeral Home, which was being driven by defendant, Albert M. Raisback. Mary C. Naslund, the decedent, with two of her daughters who were attending her, was riding as a passenger for hire in the ambulance, and she and her daughter, Bertha Pierson, both died as a result of the injuries sustained in this collision. Defendants, Haskell D. Gill, Donald C. Schuster, and Albert M. Raisback are prosecuting their appeals jointly, and will hereinafter be referred to as "Funeral Home."

All of the defendants argue that the verdict is grossly excessive. In addition, the Funeral Home argues that the evidence shows, as a matter of law, that it was not guilty of any negligence which proximately caused the occurrence, but that said occurrence was due solely to the negligence of defendant Watts. Watts argues that there is no evidence that he was guilty of any of the negligent acts charged in the complaint, and that the verdict against him is contrary to the manifest weight of the evidence, and the law. Watts also argues that the trial court erred in giving plaintiff's instruction No. 11

467

and Funeral Home's instruction No. 3. Funeral Home argues that the court erred in refusing to give its instruction No. 2.

On the evening in question, the family of decedent called the Funeral Home at Galva, requesting ambulance service for the purpose of transporting Mrs. Naslund from her farm home near Williamsfield to a hospital in Galesburg. It was not an emergency call. Defendant Raisback, an employee of the Funeral Home, drove the ambulance, and Howard Cubbon, also an employee of the Funeral Home, rode along as an attendant. The ambulance arrived at the Naslund home shortly after 9 p. m., whereupon Mrs. Naslund was placed on a cot and put in the ambulance. Bernice Pennington and Bertha Pierson, daughters of decedent, rode in the ambulance, Mrs. Pierson riding in the front seat with the driver, and Mrs. Pennington riding in the back seat with the attendant and her mother.

U. S. Highway 34, north of Galesburg, is a two-lane hard surfaced highway running generally in a northerly and southerly direction. It was, at the time of the collision, a clear night, and the pavement was dry. Prior to the accident the ambulance was traveling southbound on Highway 34. Watts lived some four to five hundred feet east of Highway 34, and from his home there was an east-west private road running out to and intersecting with Highway 34. Watts testified that on the evening in question he drove his dump truck on the private road westerly from his home to a stop at the easterly side of Highway 34 where he waited for a number of vehicles to pass, and then turned left onto the highway and proceeded in a southerly direction. Watts stated that before he turned onto the public road, he looked to his right and saw some red lights about one-half mile to the north of him. The ambulance, at this time, was approaching from the north, and Raisback, the driver, stated that he had the headlights and the

468

red emergency lights on, and that he was traveling approximately sixty miles per hour. He claims that he first saw the Watts' truck when he was approximately 400 feet north of it, and that at that time the Watts' truck was stopped on the east side of, and was perpendicular with, Highway 34. Raisback continued south at approximately sixty miles per hour in the southbound lane of traffic. Immediately prior to the impact, he applied his brakes, but was unable to avoid the accident. The right front fender of the ambulance collided with the left rear corner of the truck. Raisback was unable to avoid the collision by pulling into the northbound lane of traffic because another vehicle, traveling northerly, was approaching him in that lane. After the impact the ambulance came to rest in the northbound traffic lane, headed in a southerly direction, and approximately seventy-five feet south of the point of impact. The Watts' truck came to rest on the right shoulder of the highway a short distance south of the point of impact, and was upside down facing in a northerly direction. A state trooper testified that the point of impact was eighty-eight feet south of the point where the Watts' driveway intersected Highway 34.

All of the defendants admit that the plaintiff is entitled to recover in this case, but the Funeral Home and the defendant Watts each argue that he or it was free from negligence, and that the actions of the other constituted the negligence which proximately caused this collision. The trial court, without objections from any of the defendants, instructed the jury, "[T]hat as a matter of law neither the decedent, Mary Cecil Naslund, nor any of her next of kin were guilty of any contributory negligence with respect to the occurrence in question." The jury, then, had only two issues to decide: first, should there be any joint or separate liability imposed upon either Watts or the Funeral Home, and second, what was the extent of the damages to plaintiff.

469

 A negligent act or omission may be a proximate cause of injury where it concurs with other causes acting at the same time which, in combination with it, result in the injury. Kinsch v. DiVito Const. Co., Inc., 54 Ill App2d 149, 203 NE2d 621; Bernard v. Elgin, J. & E. Ry. Co., 34 Ill App2d 466, 181 NE2d 613. Where injury or damage is caused by the concurrent negligence of two persons and the accident would not have occurred without the negligence of both, the negligence of each is the proximate cause of the injury or damage. American Nat. Bank & Trust Co. v. Peoples Gas Light & Coke Co., 42 Ill App2d 163, 191 NE2d 628. In such instances one guilty of negligence cannot avoid responsibility therefor merely because another person also is guilty of negligence contributing to the same injury or damage, notwithstanding the injury or damage would not have occurred but for the negligence of the other person. Springfield Consol. Ry. Co. v. Puntenney, 101 Ill App 95. The issue of whether separate acts of negligence concurred as a proximate cause of injury is for the determination of the jury. We think the record here supports the jury's conclusion that the conduct of both Watts and the Funeral Home constituted concurring acts of negligence which proximately caused the death of Mrs. Naslund. In our opinion it could reasonably be inferred by the jury from the evidence that Watts ignored the approaching ambulance when proceeding onto the highway, and that the ambulance driver, who was not on an emergency run, failed to keep a proper lookout and attempted to pass Watts when it was not safe to do so, and that these concurring acts of negligence were the proximate cause of the collision.

██ ██ Watts argues that it was error for the trial court to give plaintiff's instruction No. 11, which is IPI 34.05, and which is designed to be used in wrongful death cases where mortality tables have been admitted

in evidence, as they were in this case. Watts' objection was directed towards paragraph 3 of this instruction, which paragraph informed the jury that they must reduce to present cash value any award for future pecuniary damages suffered by the next of kin. The basis of Watts' objection was "that the evidence failed to form a foundation that pecuniary benefits flowed from the deceased to her adult children." We conclude that there was sufficient evidence upon which to base this instruction, and that the giving of this instruction, in conjunction with the giving of plaintiff's instruction No. 36 (IPI 31.04) and the Funeral Home instruction No. 8 (IPI 31.03) correctly instructed the jury on the damage issue of this case. .

■ Watts next argues that the court erred in giving Funeral Home instruction No. 3, which stated:

"The plaintiff claims that Mary Cecil Naslund was injured and killed because the defendant, Robert W. Watts, was negligent in failing to yield the right-of-way to the ambulance in which Mary Cecil Naslund was riding, and he was about to enter Route 34, or to cross the same, and that said defendant's failing to yield the right-of-way was a proximate cause of Mary Cecil Naslund's death.

"The defendant, Robert W. Watts, denies that he failed to yield the right-of-way, denies that he was negligent, and denies that any claimed act or omission on his part was a proximate cause of such death.

"Said defendant further denies that said decedent's next of kin sustained damages to the extent claimed."

Plaintiff's complaint separately charged Watts and Funeral Home with several acts of negligence. Yet plain-

471

tiff tendered an issue instruction (plaintiff's instruction No. 34–IPI 20.01 Modified) which framed the issues between plaintiff and Funeral Home, and made no mention of the issues between plaintiff and Watts. The Funeral Home then tendered said 'instruction No. 3, which merely set out the issues omitted from plaintiff's instruction No. 34. We conclude that plaintiff's instruction No. 34 and Funeral Home instruction No. 3, together, correctly state the issues raised by the pleadings, and that these instructions were properly given by the court.

■ Funeral Home complains of the trial court's refusal to give its instruction No. 2, which informed the jury, in the language of the statute, that "The driver of a vehicle about to enter or cross a highway from a private road or driveway, should yield the right-of-way to all vehicles approaching on said highway." We note that this defendant's theory of the case, i. e., that not it, but Watts caused the collision, was fully covered by the above stated Funeral Home instruction No. 3, and consequently, we are of the opinion that the refusal of the court to give Funeral Home instruction No. 2 did not constitute prejudicial error.

■ ■ The last issue in this appeal, raised by all the defendants, is that the verdict is grossly excessive. The record discloses that plaintiff's instruction No. 36, given without objection by any of the defendants, informed the jury that "where the decedent leaves children and a grandchild, the law recognizes a presumption that they have sustained some substantial pecuniary loss by reason of the death." This presumption, in our opinion, applies even where the decedent was an adult and the lineal kinsmen are also all adults, Hall v. Gillins, 13 Ill2d 26, 147 NE2d 352; Dukeman v. Cleveland, C., C. & St. L. R. Co., 237 Ill 104, 86 NE 712; Ferraro v. Augustine, 45 Ill App2d 295, 196 NE2d 16; but

cf., Barrow v. Lence, 17 Ill App2d 527, 151 NE2d 120, and must be considered by the jury with any evidence offered regarding damages, if there is such other evidence, or alone, if no such evidence is presented, in determining what it will award in a wrongful death suit if it decides in favor of the plaintiff.

Evidence adduced in the instant case indicates that decedent, at the time of her death, was a widow, seventy-seven years of age, who owned and lived on a 110-acre farm. She also owned the farm machinery and cattle on this farm. She made her own decisions concerning the operations of her farm, even though her son, Waverly Naslund, farmed this land on a sharecrop basis with her. Her annual income from the farm was approximately $1,500, and in addition to this, she received monthly social security payments of $68. She was an industrious, conservative person, who handled her own bank account and paid her own bills. She provided a home on the farm for her daughter, Bernice Pennington, who testified that decedent helped with the housework and baking, and paid for the utilities, groceries, fuel bills, and all the expenses of their household. Mrs. Naslund did sewing for her family, gave them gifts, rendered advice to them, and sometimes baby-sat with her grandchildren. Her physician, who had last seen her eight or nine days before her death, testified that her general health was fair for a woman of her age, but that she did have hypertension, arteriosclerosis, arthritis, anemia, and a chronic leukemic condition. The doctor testified that Mrs. Naslund "could die very shortly or live a long time," and that these conditions would necessarily reduce the normal life expectancy of a person her age. The mortality table, admitted into evidence, shows that a white female at the age of 77 years, has a life expectancy of seven years. The medical and funeral expenses amounted to $1,301.60. The lineal de-

scendents of Mrs. Naslund, represented in this suit, are Bernice Pennington and Mildred Smith, daughters; Waverly Naslund, a son; and Mary Diane Pierson Potts, a granddaughter, the heir-at-law of Bertha Pierson, the daughter who predeceased Mrs. Naslund.

The amount of damages to be awarded in a wrongful death action cannot be determined with mathematical certainty, and rests largely with the discretion of the jury. Jury awards, in such cases, should not be set aside on review unless they are evidently the result of passion or prejudice, or bear no relation to recovery for pecuniary injuries to lineal descendents. In the instant case the plaintiff did not rely solely on the presumption of pecuniary loss that obtains to lineal kinsmen, but offered evidence of the character of decedent, her mental and physical capacity, her prospects for life, her habits of industry, the amount of her usual earnings, and the nature of the benefits being bestowed by the decedent on her descendents at the time of her death. Although other reasonable persons sitting as triers of fact might have fixed the award in this case at a lesser amount than that fixed by this jury, we do not believe that the record herein discloses that the award of $15,-000 was the result of the jury's passion or prejudice, or that it bears no reasonable relation to the pecuniary injuries suffered by the lineal descendents. Consequently, the judgment is affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.