LAWRENCE BERNER, Plaintiff-Appellant, *v.* JOSEPH W. KIELNIK, Defendant-Appellee.

First District (5th Division) No. 81—2659

Opinion filed August 12, 1983.

420

Arnold and Kadjan, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, Dan L. Boho, and Richard B. Rogich, of counsel), for appellee.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

This is an action to recover damages for personal injuries sustained by plaintiff in a collision involving plaintiff's car and defendant's van. The accident in question occurred at approximately 3:45 p.m. on March 20, 1977, at the intersection of Western Avenue and Roscoe Street in Chicago, Illinois. Western Avenue is a north-south street. Roscoe runs east and west. The traffic is controlled by automatic signals. The jury answered a special interrogatory and returned a verdict against plaintiff finding that defendant was not negligent. The trial court thereupon entered judgment for defendant. Plaintiff appeals from the trial court's judgment as well as the court's order denying his post-trial motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The questions for review are: (1) whether the jury's finding is against the manifest weight of the evidence; (2) whether defendant was negligent as a matter of law; and (3) whether defense counsel's comments were improper. For the reasons hereinafter discussed, we affirm.

The record submitted on appeal is incomplete. The transcript of trial testimony begins with defendant's testimony under cross-examination on the second day of trial. Defendant stated that he was traveling north on Western and that he was the first car at the intersection. The traffic light was red. The left turn arrow was not on.[1] Defendant stopped at the red light. He stated that he first saw plaintiff's car before he (defendant) reached the intersection when it was north of (approaching) the traffic device. Defendant estimated that plaintiff was traveling at 30 or 35 miles per hour. He said that he saw plaintiff's car again when it was two car lengths away. Defendant saw his green left turn arrow go on and after a regulated amount of time, it went off. When his light turned green, defendant proceeded to

---

[1] A green *arrow* permits traffic to make an uninterrupted left turn, while a green *light* allows traffic to proceed forward. As will be further explained, the traffic lights for both north and southbound traffic at the intersection of Western Avenue and Roscoe Street operate simultaneously.

make a right turn to go east on Roscoe Street. Plaintiff, who was traveling south on Western Avenue, had also entered the intersection to make a left turn onto Roscoe. Defendant testified that he attempted to maneuver his vehicle on an angle in order to avoid hitting plaintiff. At this point, the vehicles collided. Plaintiff's car was hit on its passenger side.

Next to testify was Richard Buell, plaintiff's friend who had attended an auction that day with plaintiff and who was driving his car from the auction to a tavern where they had planned to meet. Buell testified that he witnessed the accident. He stated that when plaintiff reached the intersection, the traffic light was red and the left turn arrow was not on. Plaintiff was the third car in the left-hand turn lane. Buell was two car lengths behind plaintiff. He said that when the traffic light turned green, the left turn arrow went on. He saw plaintiff proceed through the intersection. Plaintiff was hit when he made a left turn. Buell testified further that the two cars in front of plaintiff had safely made the turn. On cross-examination he stated that the traffic light was green for southbound traffic at the same time that the left turn arrow was green.

David O'Halleran, a traffic engineer who has been employed by the Chicago Bureau of Street Traffic for 13 years, explained how the traffic signals work. He stated that the green left turn arrow at this intersection would remain on for seven seconds. When the green arrow is on to make a left turn, the light for the traffic *not* turning left is red. He testified on cross-examination that northbound and southbound traffic simultaneously receive either a green light to proceed north or south or a green arrow for left turns. He said that a green light and a green arrow would *not* be on at the same time.

Plaintiff then testified that as he made his turn, he decelerated his speed to between 10 and 15 miles per hour. He explained that prior to the accident his medical history included stiffness in his neck but because the impact of the collision jolted his neck, he experienced very sharp pains and was advised by a doctor to wear a cervical collar. Plaintiff said that he still had problems with his neck although it was not as stiff and painful now as it had been shortly after the accident. On cross-examination, he acknowledged that he had testified that when he was 100 feet from the intersection he was traveling at 30 miles per hour and that the traffic light was red. When he was approximately 95 feet from the intersection he saw the green left turn arrow come on. Plaintiff decelerated his speed and made his turn. Plaintiff was further cross-examined about his injuries and medical treatment.

Next to testify was Doctor Eric Lake Fischer, who examined plaintiff four months after the accident. Fischer explained the procedure he used to conduct his examination, which included taking X rays and rotating and bending plaintiff's neck. His diagnosis was that plaintiff had an arthritic condition and that his spine had been pushed forward as a result of trauma, which he said can be any form of force applied to the body. After explaining the types of medications that plaintiff had been taking prior to the accident, Fischer testified that these drugs would not affect a person's ability to operate a car or to see and react to things while operating the car. Fischer further stated that an accident or trauma would aggravate a stiff area of the body. On cross-examination, Fischer testified that plaintiff told him that the pain in his neck developed over a period of time subsequent to the accident. Upon further questioning, Fischer stated that based on his examination and plaintiff's previous medical records, plaintiff was presently unable to bend his neck to the same degree that he could before his accident. Fischer was unsure as to whether plaintiff had sustained any head injuries at any time prior to the time of this accident. Defense counsel pointed out, however, that plaintiff's hospital chart showed that three years before the present accident, plaintiff had hit the left side of his face against the handlebar of a motorcycle. Fischer responded that whether there would be trauma to the neck in that instance would depend on the angle of the impact. On redirect and recross-examination, Fischer was questioned about plaintiff's X rays and the condition of his spine before and after his accident. The record reveals that the trial was then continued until 1:45 p.m.; however, those proceedings apparently were not filed. Instead, the record continues with a discussion in chambers between counsel and the trial judge two days later concerning jury instructions.

OPINION

■■■ Initially, plaintiff contends that the jury's finding is against the manifest weight of the evidence. This contention can be addressed summarily and in this regard, we find the court's holding in *Geleto v. Giglietti* (1976), 40 Ill. App. 3d 226, 352 N.E.2d 1, persuasive of our decision. The court in *Geleto* determined that:

> "[W]e need not consider the manifest weight question because the record filed on appeal does not contain the transcript of the morning session of the trial at which plaintiffs presented their case. When a transcript is incomplete, we are bound to presume that all of the evidence heard by the jury was sufficient to support the verdict." (40 Ill. App. 3d 226, 228.)

The absence of a report of proceedings thus deprives a reviewing court of a basis for reaching issues whose merits depend on the omitted matters including, as in the instant case, questions of the sufficiency of the evidence presented at trial. (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042, 389 N.E.2d 182.) Because a complete record was not tendered, we must therefore presume that the omitted evidence supported the jury's verdict. Although a reviewing court will indulge in every reasonable presumption favorable to the judgment or ruling appealed from, any doubt arising from the incompleteness of the record will be resolved against the appellant. (*Sandberg v. American Machining Co.* (1975), 31 Ill. App. 3d 449, 452, 334 N.E.2d 246.) Moreover, a court of review, in determining whether the verdict is against the manifest weight of evidence, must consider not only the verdict of the jury but the fact that the trial judge also saw and heard witnesses, heard arguments of counsel and then denied the plaintiff's motion for a new trial. (*Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 74, 209 N.E.2d 12.) Accordingly, we find that plaintiff's argument on this issue is without merit.

The absence of a complete record on appeal is also fatal to plaintiff's second contention that defendant was negligent as a matter of law.

■■ ■ We note at the outset that when two vehicles approach or enter an intersection from differing roadways at approximately the same time, all drivers have a duty to maintain a proper lookout and to use every precaution to avoid a collision, regardless of who has the right of way. (*Olson v. Ortiz* (1978), 60 Ill. App. 3d 787, 789, 377 N.E.2d 350; *Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 284, 355 N.E.2d 547.) The question as to *which* driver has the right-of-way at an open intersection must be determined by the jury, particularly where considerations of speed and distance are involved and the evidence is conflicting. (*Orlandi v. Caraway* (1973), 9 Ill. App. 3d 628, 631, 293 N.E.2d 337; *Pfister v. West* (1964), 53 Ill. App. 2d 305, 310, 203 N.E.2d 35.) It is also the jury's function to determine whether a driver kept a proper lookout for through traffic (*Moss v. Wagner* (1963), 27 Ill. 2d 551, 555, 190 N.E.2d 305), whether he exercised reasonable care and whether his failure to do so proximately caused the other driver's injury. (*Lode v. Mercanio* (1979), 77 Ill. App. 3d 150, 154, 395 N.E.2d 1014.) Generally, contributory negligence is a question of fact for the jury. (*Orlandi v. Caraway* (1973), 9 Ill. App. 3d 628, 631, 293 N.E.2d 337.) It is well-established, however, that the trial court should enter a directed verdict or a judgment notwithstanding the verdict in those cases in which all the evidence, when

viewed in its aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In making this determination, the court may not substitute its judgment for that of the jury as to the credibility of witnesses nor may the court determine the preponderance of the evidence. (*Roedl v. Lane* (1976), 41 Ill. App. 3d 1062, 1065, 355 N.E.2d 354.) Contributory negligence thus becomes a question of law only when all reasonable minds would agree that based upon the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant, judgment in the nonmovant's favor would not be permitted to stand. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1085, 401 N.E.2d 1145.

Applying the above to the case at bar, our review of the testimony at trial reveals patently conflicting testimony regarding the cause of the accident. Plaintiff acknowledged on cross-examination that when he was 100 feet from the intersection he was traveling at 30 miles per hour:

"Q: Mr. Berner, this morning, you're telling us that you were about a hundred feet from the intersection, you saw the light change and you were going 30 miles an hour, is that correct?

A: Could you repeat that, please?

Q: Yes, didn't you tell us just a little bit ago when we started the questioning this morning that you were going 25 to 30 miles an hour when you were about a hundred feet from the intersection when you saw the light change and the arrow come on?

A: Yes."

However, plaintiff then agreed that he had also previously testified that he was traveling at 15 miles per hour:

"Q: And yesterday you testified, did you not, that when you were a hundred feet from the intersection you saw the red light; when you were 95 feet from the intersection you saw the green arrow come on and from the point in time that you were traveling 15 miles an hour decelerating in your own words down to 10 miles an hour at the time you got to the point of the intersection; and you said at that time, did you not, that you had your foot off the gas and brake and went into the turn, at which point your speed was about 8 to 9 miles an hour, wasn't that your testimony yesterday?

A: Yes, it was."

Plaintiff stated under further cross-examination that his speed was 30

miles per hour.

The discrepancies in plaintiff's testimony were highlighted when he was then impeached with his testimony from an earlier deposition. Counsel read from plaintiff's deposition and queried whether he had stated in his deposition that he could have been traveling at 15, 14, 10 or five miles per hour. Plaintiff responded that he had in fact answered in that manner. The record further reveals discrepancies in the testimony of plaintiff's eyewitness, Richard Buell. Immediately before the accident, Buell stated that plaintiff's car was also stationary, waiting to make a left turn. He testified that when the left turn arrow came on, the color of the traffic light would be green. Buell's testimony was contradicted, however, when plaintiff's next witness, David O'Halleran of the Chicago Bureau of Street Traffic, testified under cross-examination that a green arrow and a green light are never on simultaneously for the southern flow of traffic, which is the direction in which plaintiff was proceeding.

Clearly, this testimony raises the question of plaintiff's negligence. It could also easily have adversely affected plaintiff's theory of how the collision occurred and it could have damaged the credibility of plaintiff's witnesses. Because the testimony placed plaintiff's negligence in issue, it was a matter to be decided by the trier of fact. (*Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 321, 279 N.E.2d 44.) The record (albeit incomplete as it stands) substantially presents conflicting testimony regarding the events leading up to the collision. We therefore disagree with plaintiff's contention that defendant was negligent as a matter of law. Questions on which reasonable men could arrive at different results should never be determined as a matter of law. (*Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 75, 209 N.E.2d 12.) We therefore hold that the resolution of this case was properly submitted to the jury and that its verdict was correct. Moreover, we cannot say that when the evidence is viewed most favorably to defendant it so overwhelmingly favors the plaintiff that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The evidence favorable to defendant indicates that plaintiff attempted to make a left turn after his green arrow had gone off and after defendant had proceeded to make a right turn from his lane of traffic onto Roscoe Street. Since a verdict in favor of defendant could stand, the trial court's denial of plaintiff's motion for a judgment notwithstanding the verdict was proper and in accordance with the *Pedrick* standard set forth above.

Plaintiff argues further that defendant made a judicial admission

of negligence when he stated that he proceeded into the intersection after he saw plaintiff's car. Defendant testified under cross-examination that he first saw plaintiff's blue Datsun automobile as it was approaching the traffic light and again when plaintiff was going through the intersection. In our opinion, however, this testimony is not an admission. The record reveals that defendant stated that he saw that the traffic light was red, that the left turn arrow came on and then the light turned green. He saw plaintiff's car when plaintiff made a left turn. It is plausible that based on this testimony, plaintiff attempted to turn after his green arrow went off and when the traffic light was green. This could very well have been at or about the same time that defendant proceeded into the intersection. As we have previously explained, testimony regarding plaintiff's speed was conflicting. Moreover, because the trial record does not include defendant's testimony on the first day of trial nor does it include the testimony of defendant's eyewitness, Tom Barber, we cannot say that defendant made a judicial admission.

■ The third issue raised on appeal is the alleged impropriety of defense counsel's comments when, during cross-examination, he attempted to read to plaintiff a portion of his complaint which was filed eight years ago following a car accident plaintiff was involved in. We disagree with plaintiff's contention that this colloquy constituted prejudicial error. After the trial judge admonished counsel from reading the complaint, counsel's remarks were apparently directed to the judge in an effort to explain why he sought to question plaintiff about the injuries he allegedly had sustained. The court explained in the presence of the jury that the injuries complained of were general allegations that are contained in a form book. The jury was thereby apprised of the uniform, standard and routine language in a complaint for personal injuries. Because there was extensive testimony regarding plaintiff's medical history as well as how the collision may have aggravated the stiffness in his neck, we fail to see how the interchange between counsel and the trial judge prejudiced the jury in its consideration of whether plaintiff sustained compensable injuries.

Accordingly, for the aforementioned reasons, the trial court's judgment is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.