ROSALIND COOPER, Adm'r of the Estate of Anne Herbst, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 85—2698

Opinion filed March 11, 1987.

RIZZI, J., specially concurring.

S. Joseph Formusa, of Rabens, Formusa & Glassman, Ltd., of Chicago, for appellant.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, Todd A. Smith, and David A. Novoselsky, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Rosalind Cooper, as administrator of the estate of the decedent, Anne Herbst, brought wrongful-death and survival actions to recover damages resulting from the alleged negligence of defendants Chicago Transit Authority (CTA) and its agent and bus operator, Francisco Muniz. At the conclusion of all the evidence at a jury trial, plaintiff voluntarily dismissed her action against Muniz. The jury returned a verdict against the CTA of $200,000 under the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, pars. 1, 2), and $2,500 under the Survival Act (Ill. Rev. Stat. 1979, ch. 110½, par. 27—6). The trial court entered judgment accordingly, and defendant appeals.

Defendant contends that an adult child may not recover any damages or, in the alternative, is not entitled to a presumption of substantial pecuniary loss, for loss of society and companionship of a deceased parent; that the court erred in ruling as a matter of law that decedent was not guilty of contributory negligence; that the court erred in admitting repetitive evidence regarding the decedent's family background and injuries; that there was insufficient evidence of conscious pain and suffering to prove a *prima facie* case under the Survival Act; and that plaintiff's counsel's remarks were so improper as to deprive defendant of a fair trial.

On June 24, 1980, at about 5 p.m., Muniz drove a bus westbound on Sheridan Road in Chicago. The bus turned right on a green light to proceed north on Broadway. At the same time, decedent stood at the northeast corner of the intersection and began to cross Broadway from east to west, with the green light. The bus struck decedent, and she died the next day as a result of her injuries. Decedent was sur-

vived by plaintiff, her daughter.

Patricia Turbin testified that she was in her car, stopped at a red light facing south on Broadway near Sheridan. She noticed decedent step off the curb at the northeast corner and begin walking straight west into the marked crosswalk. Decedent had walked a few feet when the bus, traveling 5 to 10 miles per hour, made a wide right turn onto Broadway. The front door of the bus struck the left side of decedent's face, shoulder, and side. Both the bus and decedent had the green light. Turbin did not hear a horn and did not see the bus slow down. Turbin walked over to the scene and observed that decedent's head and face were next to the right front wheel of the bus.

Debra Danneman was a passenger who was seated on the right side of the bus, opposite the rear exit door. Danneman testified that as the bus reached the corner, decedent was crossing the street within the crosswalk lines. Danneman then felt a bump at the point where the bus, traveling at about 10 miles per hour, faced northwest. Danneman stated that the bus was behind decedent, but on a photograph she marked the right front corner of the bus at an angle slightly ahead of decedent.

Alfred Van Den Bosch was in a gas station at the northeast corner of the intersection when he saw decedent walk to the curb and stop. He also saw a young girl board the bus, which was stopped at the corner facing west. After the young girl sat down, she jumped back up and talked to the driver, blocking his view out of the front door. Van Den Bosch testified at trial that after decedent stepped off the curb into the crosswalk, the bus began to move. Before trial, the witness had made a statement that the bus and decedent began moving at the same time. Both had the green light. The bus was 7 to 10 feet behind decedent. When the bus was 15 to 20 feet into the intersection, its front began to swing around in a "side movement." It was moving 5 to 10 miles per hour. The bus did not pass decedent. Decedent was walking at a leisurely speed, and the bus was moving much faster than she. Nothing indicated she saw the bus before the impact. Van Den Bosch did not see the impact, but saw decedent falling at a 45-degree angle, with the front door of the bus against her. When the witness ran over to the bus, he saw the outer right side of the front tire resting on the side of decedent's face. The bus was stopped at a northwesterly angle.

Alfonso Rivera, a Chicago police officer who previously had been an emergency medical technician for three years, testified that he arrived at the scene about two minutes after receiving the call. Decedent's head was pinned under the right front wheel of the bus. She

had a shallow pulse. Rivera heard the decedent moaning as he stood close to her. He did not know if she was conscious.

Joseph McLary, a paramedic, arrived at the scene within two minutes of receiving the call. The deceased was lying face down, looking into the tire of the bus with her head wedged in under the tire. She was unconscious at the time. She had a pulse and dangerously low blood pressure. Decedent was treated at the scene and then moved to the hospital, where she died the following day. The cause of death was injury to the brain as a result of the accident.

Elsie Silverman, decedent's sister, testified after defendant made a motion *in limine* to exclude evidence regarding decedent's background. The court ruled that testimony would be limited to the period of time after the birth and adoption of plaintiff by decedent and evidence of decedent's intellectual abilities. The court excluded other evidence related to decedent's childhood and family life. Silverman testified regarding decedent's background. The court also sustained an objection to Silverman's testimony that decedent had turned down a scholarship to the University of Chicago because she needed a job to help her family during the Depression. The court sustained an objection to Silverman's testimony that the relationship between plaintiff and decedent was very close, especially since decedent had tried to have a child for many years before adopting plaintiff. The witness testified that when plaintiff underwent cancer surgery, decedent refused to leave the city, insisting on remaining nearby in case plaintiff needed her. Silverman also testified regarding decedent's interest in art, music, literature, and politics and her intellectual abilities.

Louise Solkowitz, another sister of decedent, testified over objection that she was widowed in 1977 and saw decedent weekly and talked to her daily. Over a sustained objection and admonition from the court, the witness testified regarding decedent's interests and abilities. The court advised plaintiff's counsel to avoid repetitive testimony. Solkowitz testified that decedent read everything current, and the witness described decedent's personality, including her habits for thrift. The witness also testified that the relationship between decedent and plaintiff was very loving and close. Decedent had refused to leave Chicago for a warmer climate, declaring that she would never leave her daughter.

Jack Chernof, a family friend, testified regarding decedent's personality and charitable activities. He stated that the relationship between plaintiff and decedent was excellent. He was not sure how often they saw each other.

Plaintiff testified that she lived with her parents until she married

at age 27. After her marriage, plaintiff saw decedent every Sunday unless illness or bad weather interfered. They would take walks, do errands, or just sit and talk during these weekly visits. Other than her husband, decedent was plaintiff's only close friend. She received many gifts from her mother, some of which were introduced as exhibits at trial. Over objection, plaintiff testified that when she was hospitalized for three weeks, decedent visited her 90% of the time. Plaintiff stated that decedent had been in excellent health.

After plaintiff rested her case, defendant moved for a directed verdict as to the survival action, contending that the evidence failed to show decedent had suffered any conscious pain. The court denied the motion. Defendant then admitted liability and moved to strike all testimony with regard to the nature of the injury and treatment received, as it was no longer material. No express ruling was made on the motion to strike. The jury was advised that defendant had admitted liability and that defendant would present evidence on one aspect of the damages.

Dr. Marshall Matz, a neurosurgeon, testified for defendant that the medical records indicated decedent was admitted to the hospital at 5:50 p.m. in an unconscious state and never regained consciousness. The paramedic's report indicated that she was unconscious at 5:25 p.m. In the doctor's opinion, decedent was brain dead at approximately 10:30 p.m. on the night of the accident. In response to a hypothetical question which included the fact that a police officer with paramedic training heard decedent moaning minutes after the accident, Dr. Matz opined that decedent did not experience conscious perception of pain. Dr. Matz stated that the initial impact rendered her unconscious and he attributed the moaning to a respiratory sound caused by decedent's bleeding from the ears and nose as the result of a basal skull fracture. Dr. Matz was of the opinion that a 12-ton bus moving at the speed of 3 to 8 miles per hour, striking decedent in the face, was a competent force to render decedent unconscious before she fell to the ground.

Defendant rested its case and moved for a directed verdict on the survival action. No specific ruling was made and the jury returned verdicts for plaintiff on both the wrongful-death and survival counts.

■ Defendant first contends that the court erred in allowing plaintiff, an adult child, any recovery for the loss of society and companionship of her deceased mother. Recovery under the Wrongful Death Act is limited to damages for pecuniary injuries. (Ill. Rev. Stat. 1979, ch. 70, par. 2.) In *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228, the court expanded the scope of pecuniary injury to in-

clude nonmonetary losses. The court held that pecuniary losses may include the loss of society and companionship suffered by parents after the death of their minor child.

The Illinois Supreme Court, relying on *Bullard*, recently held that parents may recover for loss of society after the death of an adult child. (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107.) Also relying on *Bullard*, this court has previously held in a reverse factual situation that an adult child may recover for loss of society as a pecuniary injury after the death of a parent. (*In re Estate of Keeling* (1985), 133 Ill. App. 3d 226, 478 N.E.2d 871.) Prior to the holding in *Bullard*, several cases permitted recovery for pecuniary loss despite the surviving child's adulthood. (See, *e.g.*, *Smith v. Jewell* (1976), 41 Ill. App. 3d 754, 354 N.E.2d 471; *Clutts v. Throgmorton* (1974), 18 Ill. App. 3d 709, 310 N.E.2d 405; *Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 224 N.E.2d 474; *Parthie v. Cummings* (1944), 323 Ill. App. 296, 55 N.E.2d 402.) These holdings are persuasive. The fact that *Bullard* has extended pecuniary loss to include loss of society and that *Ballweg* involved a reverse factual situation does not alter the long-established rule that an adult child may recover for a pecuniary loss suffered as a result of a parent's death. Thus, the trial court properly allowed the adult plaintiff here to recover damages for the pecuniary injury of loss of society.

■ Defendant argues, however, that even if a recovery for loss of society is permitted, plaintiff was not entitled to a presumption of substantial pecuniary loss, as the jury was instructed. The long-established rule prior to *Bullard* states that even if the wrongful-death action is brought by lineal next of kin who are adults, a presumption arises that substantial pecuniary loss was suffered. (See, *e.g.*, *Dukeman v. Cleveland, Cincinnati, Chicago, & St. Louis Ry. Co.* (1908), 237 Ill. 104, 86 N.E. 712 (adult children entitled to presumption of pecuniary loss upon death of their mother); *Ferraro v. Augustine* (1964), 45 Ill. App. 2d 294, 196 N.E.2d 16 (parents entitled to presumption of pecuniary loss upon death of adult child; court expressly disapproved any attempts to limit presumption to cases involving minor children).) Thus, prior to *Bullard*, the courts have held that in the factual setting presented in the present case, the adult child was entitled to a presumption of substantial loss following the death of a parent. See, *e.g.*, *Dukeman v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1908), 237 Ill. 104, 86 N.E. 712; *Smith v. Jewell* (1976), 41 Ill. App. 3d 754, 354 N.E.2d 471; *Clutts v. Throgmorton* (1974), 18 Ill. App. 3d 709, 310 N.E.2d 405; *Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 224 N.E.2d 474; but see *Chicago & Western Indiana R.R. Co. v. Pta-*

*cek* (1897), 171 Ill. 9, 49 N.E. 191 (adult children are not entitled to presumption of pecuniary loss); *Hudnut v. Schmidt* (1945), 324 Ill. App. 548, 58 N.E.2d 929 (relies on *Ptacek* holding that adult children are not entitled to presumption).

In 1984, when *Bullard v. Barnes* extended the concept of pecuniary loss to include loss of society, the court also affirmed the rule that plaintiffs were entitled to a presumption of pecuniary injury in the loss of their minor child's society, which presumption could be rebutted by evidence that the parent and child were estranged. The Illinois Supreme Court recently extended this rule in *Ballweg v. City of Springfield.* The court held that the parents of a deceased adult child were entitled to the loss-of-society presumption. The court refused to draw a line based solely on the age of the child. The court in *Ballweg* stated that the presumption does not suddenly disappear upon the child's 18th birthday.

We find that the rationale set out in *Ballweg* also applies in the reverse factual situation where the adult child relies on the presumption to recover for the loss of a deceased parent's society and companionship. The trial court has great latitude in deciding whether this rebuttable presumption exists by reason of plaintiff's and decedent's relationship alone, as the presumption allows the court to avoid having to engage initially in highly speculative evidentiary considerations. (See *Mortensen v. Sullivan* (1972), 3 Ill. App. 3d 332, 278 N.E.2d 6; see also *In re Air Crash Disaster Near Chicago, Illinois* (7th Cir. 1985), 771 F.2d 338.) The trial court here properly instructed the jury regarding this presumption.

Defendant, of course, could have rebutted this presumption. A rebuttable presumption is not itself evidence. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708.) It merely shifts the burden of production. Once plaintiff's evidence is rebutted, the presumption no longer serves a function in the trial. (*Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128.) Implicit in the right to weigh the presumption is the right to give it no weight at all. (*Smith v. Jewell* (1976), 41 Ill. App. 3d 754, 354 N.E.2d 471.) An instruction requiring a jury to consider the presumption of substantial pecuniary loss does not require the jury to award damages irrespective of contradictory evidence to rebut this presumption.

Furthermore, we find that the trial court's giving the jury instruction was not reversible error even if the holding in *Ballweg* is distinguishable on the basis that it was the parents, not the adult child, who sought recovery predicated on their lost investment of money, affection, guidance, security, and love. (See *Ballweg v. City of*

*Springfield* (1986), 114 Ill. 2d 107.) The jury instruction here was not prejudicial where plaintiff established an actual pecuniary loss of society and companionship. See *Johnson v. McKnight* (1942), 313 Ill. App. 260, 39 N.E.2d 700. See also *In re Estate of Keeling* (1985), 133 Ill. App. 3d 226, 478 N.E.2d 871 (question of whether presumption should apply not decided, but court found that adult children had established relationship to such an extent that they had suffered loss of their father's society); *Ferraro v. Augustine* (1964), 45 Ill. App. 2d 294, 196 N.E.2d 16 (court points out that in many cases adult plaintiffs need not rely on presumption because additional evidence of pecuniary loss is introduced, and thus the presumption becomes nothing more than an available legal principle not relied upon by plaintiff). Compare *Estate of Davis v. Johnson* (7th Cir. 1984), 745 F.2d 1066.

In the present case, plaintiff introduced evidence of a close relationship with decedent. She lived with her until plaintiff's marriage. She continued to see decedent for weekly visits, during which time she received advice and companionship. Plaintiff also received many gifts from decedent. Several witnesses offered strong testimony of the shared dependency and love between the two women. Decedent continually was of assistance during plaintiff's health problems and stayed nearby despite opportunities to move to a better climate. Plaintiff sufficiently established that a relationship existed between plaintiff and decedent such that a loss of society resulted from the latter's death. Thus, although we hold that plaintiff was entitled to a loss-of-society presumption, which was not rebutted by defendant here, we further find that plaintiff offered sufficient evidence of actual pecuniary loss to sustain the award.

■ Defendant argues that if loss of society is a recoverable element of damages, there should be a reduction for any pecuniary benefit plaintiff received as a result of her mother's death. Defendant maintains that the $36,000 inheritance plaintiff received should be deducted from this judgment. We find no support in Illinois law for this proposition. Defendant relies on *Bullard v. Barnes*, which required a deduction from the parents' award for child-rearing costs which would not be expended due to their child's death. We find no merit in this argument. *Bullard* merely requires a deduction for financial expenditures and does not require deductions for the value of such things as the child's life insurance policy, savings, or personal belongings. The *Bullard* court carefully distinguished the loss of a child for whom parents were required to support financially from the loss of a spouse or parent for whom the law does not require financial support. We note that this distinction was made with specific reference to the computa-

tion of damages and was not relied upon in determining whether any recovery could be made for loss of society and companionship overall. We find *Bullard* distinguishable as it applies to the computation of damages through the use of a setoff for child-rearing expenses. No similar setoff was required in the present case.

■■ Defendant next contends that the trial court erred in ruling that there was no evidence of contributory negligence on the part of decedent and in refusing defendant's jury instructions on this issue. The question of a pedestrian's lack of due care in entering the street without looking is generally a fact question for the jury. (See *Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 450 N.E.2d 363.) The issue of contributory negligence becomes a question of law when all reasonable minds would agree that based upon the evidence and reasonable inferences and considered in a light most favorable to the movant, judgment in favor of the nonmovant would not be permitted to stand. (*Berner v. Kielnik* (1983), 117 Ill. App. 3d 419, 453 N.E.2d 729.) An instruction on contributory negligence is improper where there are no facts presented from which a finding of contributory negligence could be reached. (*Freeman v. Chicago Transit Authority* (1964), 50 Ill. App. 2d 125, 200 N.E.2d 138, *aff'd* (1965), 33 Ill. 2d 103, 210 N.E.2d 191.) Here, we agree with the trial court that the evidence establishes that decedent was walking with the green light in the marked crosswalk when struck by defendant's bus. The evidence does not support defendant's contention that decedent did see, or should have seen, the bus turning the corner and moving into her path. Any judgment finding decedent to be guilty of contributory negligence would not have been permitted to stand, and the trial court properly refused to instruct the jury on contributory negligence.

■■ Defendant also contends that the trial court erred in admitting allegedly inflammatory evidence concerning decedent's injuries and evidence regarding decedent's family history, personality, and interests and plaintiff's health, thus resulting in an award of excessive damages. All relevant evidence is admissible, and relevant evidence is that which tends to prove a matter in controversy. (*People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218, *rehearing denied* (1983), 464 U.S. 1004, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Admission of evidence is a matter largely left to the discretion of the trial judge and evidentiary rulings will not require reversal absent an abuse of discretion. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) The error is considered harmful, however, where the improperly admitted evidence is of such a nature that it influences the verdict by an appeal to passion. (102 Ill. 2d 505, 468 N.E.2d 1228.) The evidence in the

present case concerning decedent's injuries assisted the jury in determining if decedent felt any conscious pain in order to recover under the Survival Act. Moreover, defendant emphasized much of the evidence during its case in chief. The evidence had sufficient probative value to outweigh any prejudice which might have resulted from its admission.

Additionally, the evidence regarding decedent's background and her relationship with plaintiff was highly relevant to proving plaintiff's loss of society. See *Ferraro v. Augustine* (1964), 45 Ill. App. 2d 294, 196 N.E.2d 16 (plaintiff need not rely on presumption of loss of society and may introduce additional evidence to prove this loss).

■■■ Defendant also maintains that the jury might have believed that the two sisters of decedent were also to share the award, thus causing the jury to assess an amount to compensate three people, instead of just plaintiff. We cannot agree with defendant that the evidence of the relationships between decedent and her family confused the jury as to who was to be compensated for her loss of society. If this were true, the jury might well have believed that decedent's entire family was to be compensated, including the many family members who did not testify. We see no indication that any such confusing evidence was admitted. The trial court did not abuse its discretion in admitting this evidence.

■■■ Defendant argues further that references to plaintiff's having had surgery for cancer was irrelevant and highly prejudicial and inflammatory, requiring reversal. (See *Freehill v. DeWitt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52.) This evidence was relevant, however, in describing the close ties and dependence between plaintiff and decedent and the amount of love and support offered to plaintiff by decedent. Thus, it tended to prove the loss of society suffered by plaintiff and it was not error to admit this evidence. The *Freehill* case was considerably different, as the witness there testified extensively about her cancer, including details concerning the various expenses incurred and the prognosis of her disease. Similarly detailed testimony was not presented here.

■■■ Defendant next contends that the trial court erred in instructing the jury that it could consider certain elements of pecuniary loss. The jury instruction complained of included the elements of what decedent customarily contributed in the past; what instruction, moral training, and superintendence of education she might reasonably have been expected to give her child had she lived; and her habits of industry, sobriety, and thrift. Defendant argues that the instruction was improper because no evidence supported these elements of potential

damage. The record indicates that plaintiff and other witnesses did testify regarding gifts decedent contributed to plaintiff; plaintiff's reliance upon decedent for guidance and advice; and decedent's habits as a sober, thrifty person. The instruction was proper.

■■■ Defendant also contends that the trial court erred in denying its motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence on the survival action. An award under the Survival Act requires the person surviving, however briefly, to consciously experience pain and suffering. (*Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 436 N.E.2d 623; Ill. Rev. Stat. 1979, ch. 110½, par. 27—6.) A trial court may direct a verdict only when all of the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. (*Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 473 N.E.2d 935; *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274.) Here, Officer Rivera, who, as the first person to closely observe decedent after the accident, testified that decedent was moaning. In the face of that testimony, which could indicate to the jury that decedent consciously experienced pain, the trial court did not err in denying a motion for directed verdict on this issue. Dr. Matz' testimony was not so overwhelmingly in favor of defendant that no contrary verdict could stand. Dr. Matz' expert testimony was no better than the facts on which it was based (see *Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 488 N.E.2d 644), and the jury was properly allowed to weigh that testimony against Officer Rivera's testimony.

■■■ ■ Defendant's final contention is that certain arguments and comments made by plaintiff's counsel were improper and prejudicial, thus depriving defendant of a fair trial. It is necessary to consider the trial as a whole to determine if the party has been denied his right to a fair trial by the misconduct of the other litigant or his counsel. The trial court is in a unique position to make that determination since it heard all of the testimony, all of the arguments, and observed the parties and their effect on the jury. For this reason, the question rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. (*Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 450 N.E.2d 402; *Johnson v. Cunningham* (1969), 104 Ill. App. 2d 406, 244 N.E.2d 205.) Improper argument may be grounds for reversal, but only where the complaining party has been prejudiced and proper objection was made. (*Nunley v. Mares* (1983), 114 Ill. App. 3d 779, 449 N.E.2d 864; *Wolfe v. Bertrand Bowling Lanes, Inc.* (1976), 39 Ill. App. 3d 919, 351

N.E.2d 313.) The standard of review for the argument complained of is whether the argument is of such a character as to have prevented defendant from receiving a fair trial. *Trice v. Illinois Central Gulf Ry. Co.* (1984), 127 Ill. App. 3d 1019, 469 N.E.2d 344.

A careful review of the record reveals that defendant was not denied a fair trial as a result of comments made by plaintiff's counsel during opening statement or closing argument. We shall only comment on those remarks to which defendant offered an objection.

■■■ In closing argument, plaintiff's counsel's repeated references to a "family" loss were improper, since the daughter was the only person who could recover in this suit. As we have already discussed, however, there is no indication that the jury was confused on this matter. We note that plaintiff's counsel also expressly stated that the award only related to the mother-daughter relationship: "You are being asked to award for the loss of that society as it relates between a mother and a daughter." Furthermore, defense counsel emphasized in closing argument that the close relationship between decedent and her family did not prove the same type of relationship between decedent and daughter which "is what they want to be compensated for." Plaintiff's counsel's references to a family loss were harmless error.

■■■ Defendant next points to plaintiff's counsel's presentation of personal opinion during closing argument. Counsel stated, "I was just a little bit outraged" about Dr. Matz' testimony. The trial court sustained defendant's objection, and counsel immediately switched to a more generalized statement. The trial court's prompt action cured any possible error in the comment. Defendant was not prejudiced by the comments of plaintiff's counsel.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, J., concurs.

JUSTICE RIZZI, specially concurring:

I agree with the result reached by the majority, but I do not agree with the majority's *sub silentio* approval of what is stated in Illinois Pattern Jury Instruction, Civil, No. 31.01 (2d ed. 1971) (hereinafter IPI Civil 2d), and I do not agree with the majority's analysis regarding presumptions. I believe that the statement in IPI Civil 2d No. 31.01, that the "law recognizes a presumption that the lineal next of kin have sustained some substantial pecuniary loss by reason of the

death" is wrong because it confuses a presumption with an inference. The majority perpetuates the confusion.

Although the word "presumption" appears in IPI Civil 2d No. 31.01, the instruction in its application actually has reference to an inference rather than a presumption. In other words, the law recognizes an inference, rather than a presumption, that the lineal next of kin have sustained some substantial pecuniary loss by reason of one's death. This distinction is important because a presumption does not operate in the same manner as an inference operates, and the two principles should not be treated interchangeably.

Presumptions in the law are created by both the legislature and the judiciary. (J. Kaplan, and J. Waltz, Cases and Materials on Evidence 752 (5th ed. 1984).) A presumption means that in the absence of sufficient evidence to the contrary, the trier of fact is compelled to suppose a fact to be true without proof.[1] During a trial in which a presumption may or may not be applicable, if the proponent of the presumption does not introduce sufficient facts to support the existence of the presumption in the particular case, then the presumption is not applicable. However, if the proponent of the presumption introduces sufficient facts to support the existence of the presumption in the particular case, then the burden of going forward with the evidence on that issue shifts to the party opposing the presumption.[2] (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-63, 448 N.E.2d 872, 875-77.) Thus, the application of a presumption in a given case is a question of law which must be decided in the first instance by the trial court. See *In re Estate of Deskins* (1984), 128 Ill. App. 3d 942, 948-50, 471 N.E.2d 1018, 1023-24.

---

[1]This opinion is limited to a consideration of presumptions in civil cases only. Presumptions in criminal cases have special considerations that are not relevant here. See generally *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d. 39, 99 S. Ct. 2450; *County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213; *People v. Housby* (1981), 84 Ill. 2d. 415, 420 N.E.2d 151; E. Cleary and M. Graham, Illinois Evidence secs. 304.1 through 304.3 (4th ed. 1984).

[2]It should be noted that the burden of persuasion does not shift when dealing with presumptions. Rather, the burden of persuasion remains with the party who initially had the benefit of the presumption. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-63, 448 N.E.2d 872, 875-77; E. Cleary and M. Graham, Illinois Evidence sec. 301.6 (4th ed. 1984); D. Louisell, J. Kaplan, and J. Waltz, Evidence 754 (4th ed. 1981).) In this regard, the Federal Rules of Evidence provide that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Fed. R. Evid. 301.

If the trial court decides that the proponent of the presumption has introduced sufficient facts to support the existence of the presumption, then the presumption continues to exist until the end of all the evidence at trial. At that time, the trial court must make a ruling. If the trial court rules that the party opposing the presumption has put in sufficient evidence for a trier of fact to conclude that the presumed fact did not occur in the particular case, then the presumption is destroyed and the presumption no longer exists in the case.[3] The same result is reached if the party opposing the presumption has by his cross-examination so destroyed the integrity of the facts introduced to support the existence of the presumption that a trier of fact could conclude that the presumed fact did not occur in the particular case. If the trial court rules that the presumption has been destroyed, then the jury should not be instructed regarding the presumption because the presumption no longer exists in the case. Thus, the jury will have to decide whether the party with the burden of persuasion has proved the disputed fact by a preponderance of the evidence; the jury will not be permitted to rely upon a presumption. See *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-63, 448 N.E.2d 872, 875-77.

If, at the end of all the evidence at trial, the trial court rules that the party opposing the presumption has not put in sufficient evidence for a trier of fact to be able to conclude that the presumed fact did not exist in the case at trial (*i.e.*, the party opposing the presumption has not destroyed the presumption), then the presumption remains in the case, and the party with the presumption is entitled to a directed verdict or a directed finding on that presumed fact.[4] *Franciscan Sis-*

---

[3]There are some presumptions that are not destroyed unless the trial court rules that the party opposing the presumption has put in sufficient evidence for a trier of fact to conclude that the presumed fact did not occur by clear and convincing evidence. These presumptions are called strong presumptions. Generally, strong presumptions are presumptions that exist because of a strong public policy requirement, such as the existence of a presumption of undue influence if an attorney drafts a will and the attorney is given a substantial bequest under the will. *Franciscan Sisters Health Corp. v. Dean* (1983), 95 Ill. 2d 452, 463-465, 448 N.E.2d 872, 875-77; E. Cleary and M. Graham, Illinois Evidence sec. 302.1 (4th ed. 1984).

[4]A presumption is not evidence and cannot be treated as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. It is for these reasons that as soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption vanishes entirely. *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 461, 448 N.E. 2d 872, 876; *Diederich v. Walters* (1976), 65 Ill. 2d 95, 102, 357 N.E.2d 1128, 1131; *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11, 31.

*ters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877.

As can be seen from the analysis that I have made, there should be no jury instructions in civil cases that speak of presumptions. (See 95 Ill. 2d 452, 461, 448 N.E.2d 872, 876; 9 Wigmore, Evidence sec. 2491 (Chadbourn rev. 1981).) Rather, where the jury is permitted to reach certain conclusions because of the existence of particular facts in the case, jury instructions should speak of inferences, not presumptions.

An inference is a factual conclusion that is permitted to be reached by considering other facts in the course of common reasoning and logic. (E. Cleary and M. Graham, Illinois Evidence sec. 302.2 (4th ed. 1984).) In order for an inference to be permitted, it must be said with substantial assurance that the inferred fact is more likely than not to flow from the proved facts on which it is made to depend. See generally *Leary v. United States* (1969), 395 U.S. 6, 36, 23 L. Ed. 2d 57, 82, 89 S. Ct. 1532, 1548.

An inference operates differently from a presumption because an inference does not vanish as a result of the introduction of contrary evidence that is sufficient for a trier of fact to conclude that the supposed fact did not occur in the case. Also, unlike the effect of a presumption, a trier of fact is not compelled to accept an inference. Rather, the trier of fact will consider the inference and the evidence opposing the inference with all the other evidence in the case. (*Imig v. Beck* (1986), 115 Ill. 2d 18, 28 (distinguishing the application of an inference as opposed to the application of a presumption in a *res ipsa loquitur* case); *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242; G.C. Lilly, An Introduction to the Law of Evidence 48 (1978).) Of course, if the party opposing the inference offers no evidence to overcome a *prima facie* case that may be made by the reliance upon an inference, he runs the risk that the trier of fact may find against him on the issue. In addition, in exceptional cases, the party relying upon an inference may be entitled to a directed verdict because the unrebutted inference is so strong that all of the evidence, when viewed in its aspect most favorable to the opponent of the inference, so overwhelmingly favors the proponent that no verdict in favor of the opponent could ever stand. *Imig v. Beck* (1986), 115 Ill. 2d 18, 29.

For the reasons that I have stated, it is plain that a presumption and an inference should never be used interchangeably. With respect to the pertinent part of IPI Civil 2d No. 30.01, the law recognizes an inference, rather than a presumption, that the lineal next of kin have sustained some substantial pecuniary loss by reason of one's death.

This conclusion is illustrated by the result reached in *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237, where the court upheld a verdict of liability but no damages in a wrongful-death claim by the plaintiff as administrator of the estate of his two-week-old child. If there is a presumption, as opposed to an inference, that the lineal next of kin have sustained some substantial pecuniary loss by reason of one's death, then the jury in *Flynn* would have been compelled to have found some substantial pecuniary loss and awarded the plaintiff damages.

*Franciscan Sisters* expounds on the meaning and operation of presumptions. The court stated:

" '[O]nce evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed. (See 1 Jones, Evidence sec. 3:8 (6th ed. 1972).) The burden of proof thus does not shift but remains with the party who initially had the benefit of the presumption. *** As stated in Jones on Evidence, "since the presumption loses its force when evidence is introduced against it, it would naturally follow that no mention of the presumption would be made in the instructions to the jury, and the issue is submitted without any knowledge on the part of the jury of the special legal significance of the basic facts from which the presumption originally arose." 1 Jones, Evidence sec. 3:9 at 146 (6th ed. 1972).

\* \* \*

The prevailing theory regarding presumptions that Illinois follows \*\*\* is Thayer's bursting-bubble hypothesis: once evidence is introduced contrary to the presumption, the bubble bursts and the presumption vanishes. (McCormick, Evidence sec. 345, at 821 (2d ed. 1972); see *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11.) It is consistent with the Thayer approach that the party producing evidence to rebut the presumption must come forward with evidence that is "sufficient to support a finding of the nonexistence of the presumed fact." (Graham, *Presumptions in Civil Cases in Illinois: Do They Exist?* 1977 S. Ill. U. L. J. 1, 24.) If Dean [the defendant] had offered no evidence to rebut the presumption of undue influence, the plaintiff would have been entitled to a judgment as a matter of law.' " *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-63, 448 N.E.2d 872, 875-77.

In the present case, the majority makes the mistake of concluding that there is a rebuttable presumption, as opposed to an irrebuttable presumption, involved here. The fact is that every presumption is a rebuttable presumption in the sense that the party opposing the existence of the presumption can offer evidence to rebut the presumption. A so-called irrebuttable presumption is not a presumption at all. Rather, it is actually a substantive rule of law. (G. C. Lilly, An Introduction to the Law of Evidence, 50 (1978); E. Cleary & M. Graham, Illinois Evidence sec. 302.3, at 75 (4th ed. 1984).) For example, although it is sometimes stated that there is a rebuttable presumption that a child under the age of seven years is not responsible for his acts, there actually is no presumption involved. Instead, it is a substantive rule of law that a child under the age of seven years is not responsible for his acts. (G. C. Lilly, An Introduction to the Law of Evidence, 50 (1978); see IPI Civil 2d No. 11.03. Plainly, the only true presumptions that exist are those in which the party opposing the existence of the presumption can offer evidence to rebut the presumption. Thus, a so-called irrebuttable presumption is a misnomer.

I therefore feel that the reference to a presumption in IPI Civil 2d No. 30.01 is wrong. The instruction should be referring to an inference when it uses the term presumption. The fact that there is an inference, as opposed to a presumption, that the lineal next of kin have sustained some substantial pecuniary loss by reason of one's death is the reason that a jury may accept or reject the supposed fact.

Although I believe that IPI Civil 2d No. 30.01 should not have been given to the jury in this case for the reasons that I have stated, I also believe that no prejudicial error was committed because the plaintiff established without refutation an actual substantial pecuniary loss of society which sustains the verdict. Since I agree with all other aspects of the majority opinion, I concur in the affirmance of the judgment.